**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AMY DIVINE, KARL MERCHANT,** | § | **PLAINTIFFS** |
| **and COLUMBUS JONES,** | § | |
| *on behalf of themselves and all others* | § | |
| *similarly situated* | § | |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:23-cv-196-HSO-BWR** |
| | § | |
| | § | |
| | § | |
| | § | |
| **SECURIX, LLC** | § | **DEFENDANT** |

**ORDER DIRECTING PLAINTIFFS TO SHOW CAUSE WHETHER
SUBJECT-MATTER JURISDICTION EXISTS AND WHETHER *YOUNGER*
ABSTENTION SHOULD APPLY**

This matter comes before the Court sua sponte to consider its subject-matter

jurisdiction.  For the reasons that follow, the Court will direct Plaintiffs to show

cause, on or before **September 5, 2024**, whether the Court retains subject-matter

jurisdiction to proceed with this case, and whether the Court should abstain from

proceeding with this case under *Younger* abstention.

## I. BACKGROUND

A.    Plaintiffs' Complaint [1]

1.    The insurance verification program

In this suit brought pursuant to 42 U.S.C. § 1983 and the Class Action

Fairness Act ("CAFA"),[1] Plaintiffs Amy Divine, Karl Merchant, and Columbus Jones

---

[1] Pub. L. No. 109–2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.).

(collectively "Plaintiffs"), challenge how Defendant Securix, LLC ("Defendant"),

pursuant to contracts with cities in Mississippi and elsewhere, uses automated

license plate readers ("ALPRs") to identify unlawfully uninsured vehicles and then

send citations to the vehicles' owners. *See* Compl. [1] at 1–4. The Mississippi

statute mandating that drivers carry liability insurance provides:

> Every motor vehicle operated in this state shall have a motor vehicle
> liability insurance policy that covers the vehicle and is in compliance
> with the liability limits required by Section 63-15-3(j). The insured
> parties shall be responsible for maintaining the insurance on each motor
> vehicle.

Miss. Code Ann. § 63-15-4(2)(a). The "[f]ailure of the owner or the operator of a

motor vehicle" to prove she had the required insurance coverage "is a misdemeanor

and, upon conviction, is punishable by a fine of One Hundred Dollars ($100.00) and

suspension of driving privilege for a period of one (1) year or until the owner of the

motor vehicle shows proof of [the required] liability insurance" and has "paid the

fines and assessments imposed and the driver's license reinstatement fees imposed

by the Department of Public Safety." Miss. Code Ann. § 63-15-4(4). Mississippi

law also requires "[t]he Department of Public Safety, . . . in cooperation with the

Commissioner of Insurance and the Department of Revenue, [to] establish an

accessible common carrier-based motor vehicle insurance verification system to

verify the compliance of a motor vehicle with" Mississippi Code Annotated § 63-15-

4. Miss. Code Ann. § 63-16-3(1).

To enforce the insurance coverage requirements under Mississippi Code

Annotated § 63-15-4, some cities in Mississippi have contracted with Defendant to

"implement Defendant's system," which Plaintiffs call a "Diversion Program," "for

detecting, ticketing, and collecting fees from vehicle owners that Defendant believes are uninsured." Compl. [1] at 1. The ALPRs that Defendant uses to identify vehicles without required insurance coverage "capture computer-readable images of license plates that allow Defendant to compare the plate numbers against various databases to determine whether a particular vehicle is insured or not," and "can be mounted on police cars, road signs, or traffic lights." *Id.* at 4. Plaintiffs allege that Defendant "takes pictures of license plates, unlawfully runs the information through the State's verification system, and sends out Tickets" to the registered owners of vehicles when the state's verification system shows that the vehicle was uninsured. *Id.* at 6. According to Plaintiffs' Complaint [1], because Defendant assists in cities' enforcement of traffic laws, it is acting under color of law. *See* Compl. [1] at 2, 16; 42 U.S.C. § 1983.[2]

The notices Defendant sends to vehicle owners "purport[] to be . . . legitimate traffic ticket[s]," but "Plaintiffs dispute that the document[s] [are] legitimate citation[s]." Compl. [1] at 4 & n.2. The Complaint [1] alleges that the notices "represent[] that [they were] issued by the City's police department, and [they do] not mention Defendant's name." *Id.* at 6. Each notice "contains what appears to be a sworn affidavit from a police officer stating that the owner has violated the state's uninsured vehicle law" and "states the date and time of the alleged infraction." *Id.*

---

[2] "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Both the Fourteenth Amendment and § 1983 only "protect[] against acts attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024); *see id.* at 195 ("[T]he statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." (quoting parenthetically *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).

A notice will provide a vehicle owner with three options to avoid the suspension of her license: (1) "Provide proof of insurance at the time of the violation"; (2) "Enter the Diversion Program by paying a fee"; or (3) "Appear in court." *Id.* at 6–7. Plaintiffs allege that although a notice will "provide[] a court date," it "is not filed with a court, so there is no actual court date." *Id.* at 6. "The owner can provide proof of insurance over the telephone or by visiting a website," and "Defendant, not the City, maintains the telephone number and website." *Id.* at 7. So, Plaintiffs claim that "a vehicle owner calling the telephone number will not reach the City, the police department, or a court, but Defendant's 'help desk.'" *Id.*

Plaintiffs assert that, while a notice will contain an affidavit from a police officer swearing that he used the state's insurance verification system to conclude that probable cause existed that the vehicle owner violated Mississippi Code Annotated § 63-15-4, probable cause could not have existed based only upon checking whether the owner of a vehicle had properly insured the vehicle. *See id.* at 5. That is so, Plaintiffs reason, because "ALPRs identify the registered owner of the vehicle only and not the driver," *id.*, even though "[t]he Mississippi Attorney General has advised that 'if a person is driving someone else's vehicle, and neither the operator or the vehicle owner has insurance, the *operator* of the vehicle,'" as opposed to its owner, "'is in violation of the law and should be cited,'" *id.* at 7–8 (emphasis added) (quoting Op. Att'y Gen. No. 2002-0422, 2002 WL 31169193 (Aug. 2, 2002)). The operator would be the person in violation of the law in such a

scenario—for example, if the operator borrowed the vehicle[3]—because the

Mississippi Attorney General has issued an advisory opinion stating:

> [A] violation of Section 63-15-4 occurs only when both the owner and operator fail to have proof of insurance.  Therefore, if the operator has proof of insurance which covers his operation of the vehicle but the owner does not, there is no violation.  Likewise, if the owner of the motor vehicle has proof of insurance in the vehicle but the operator does not, there is still no violation.

*Id.* at 5 (quoting Op. Att'y Gen. No. 2015-00309, 2015 WL 6121922 (Sept. 4, 2015)

(quoting Op. Miss. Att'y Gen., No. 2001-0052, 2001 WL 283638 (Feb. 9, 2001))).  And

so, Plaintiffs allege that, "[b]y relying solely on information obtained from vehicle

owner records, Defendant lacked probable cause to send the Tickets to vehicle

owners." *Id.*

Plaintiffs also contend that the notices sent to vehicle owners were invalid

citations because they were not issued "in conjunction with a lawful stop." *Id.* at 6.

Plaintiffs assert that "[l]aw enforcement officers may issue a citation for violation of

the vehicle insurance statute only in connection with a roadblock used to enforce

traffic laws or upon stopping a vehicle for some other statutory violation." *Id.* at 5–

6 (first citing Miss. Code Ann. § 63-15-4(3), then citing Miss. Code Ann. § 63-16-

5(3)).  Plaintiffs point out how Mississippi law provides that "no driver shall be

stopped or detained solely for the purpose of verifying that the motor vehicle is

covered by liability insurance in the amounts required under Section 63-15-3(j)

---

[3] The question put to the Mississippi Attorney General's office in its first opinion on this issue was:
> Would the operator of a motor vehicle be in violation of Section 63-15-4(4) where the operator of a borrowed motor vehicle has insurance on all of the operator's owned vehicles, but the owner of the motor vehicle being driven does not have insurance on the vehicle being driven and there is no proof of insurance in the vehicle?

Op. Miss. Att'y Gen., No. 2001-0052, 2001 WL 283638, at *1 (Feb. 9, 2001).

unless the stop is part of [a] roadblock" conducted pursuant to Mississippi Code Annotated § 63-15-4(3). *Id.* at 6 (quoting parenthetically Miss. Code. Ann. § 63-15-4(3)). Further, Plaintiffs explain that "[e]xcept upon reasonable cause to believe that a driver has violated another traffic regulation or that the driver's motor vehicle is unsafe or not equipped as required by law, a law enforcement officer may not use the [insurance] verification system to stop a driver for" failing to maintain liability insurance under Mississippi Code Annotated § 63-15-4(2). *Id.* (quoting parenthetically Miss. Code Ann. § 63-16-5(3)).

Plaintiffs claim that, when a vehicle owner chooses to enter the diversion program and pay a fee, "Defendant receives all fee payments and then remits a portion to the City." Compl. [1] at 2. This allows Defendant to profit off the program: Plaintiffs assert that the "Diversion Program is a profitable scheme for Defendant." *Id.* at 8. Defendant has "implemented the Diversion Program for the City of Ocean Springs, Mississippi," and Ocean Springs Police Department ("OSPD") Chief Mark Dunston stated in August 2023 that, "[i]n the last couple months, [the OSPD has] identified close to 6,000 violations" with Defendant's assistance. *Id.* (quotation and citation omitted). Plaintiffs allege that "Defendant has stated that this number exceeded its expectations." *Id.* (citation omitted). Defendant also contracts with the City of Senatobia, Mississippi, to provide ALPR services for motor vehicle insurance verification. *Id.*

2.    Plaintiffs' experience with the diversion program

Turning to each Plaintiff's alleged experience with Defendant's insurance

verification program, Plaintiff Divine alleges:

> On or about July 1, 2022, [she] received an envelope via U.S. Mail containing two documents: (1) a Ticket titled, "FINAL NOTICE – PRIOR TO COURT APPEARANCE," which purports to be a ticket from the Ocean Springs Police Department . . . and (2) an April 6, 2022[,] letter bearing Police Chief Mark Dunston's signature.

*Id.* According to Plaintiffs, the notice Divine received "states that it is a Uniform

Traffic Ticket. But [it] does not, in fact or in law, comply with Mississippi's Uniform

Traffic Ticket statute, Miss. Code Ann. 63-9-21." *Id.* The notice also "contains what

appears to be a sworn affidavit from Officer Michael Ducote of the OSPD," who

"swears that, on March 30, 2022, Divine violated Miss. Code Ann. § 63-15-4 by

operating an uninsured vehicle on a public roadway." *Id.* at 8–9. The notice then

> threatens the suspension of Divine's driver's license unless she does one of three things: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300 fee by July 1, 2022 (the same day Divine received the Ticket); (3) or appear in court.

*Id.* at 9. Defendant "created and maintains the telephone number and website" the

notice provided for Divine to demonstrate proof of insurance. *Id.* at 10.

Concerning the July 1, 2022, court date, Plaintiffs allege that "no case was

ever docketed with the court," such that the notice "'summon[ed]' Divine to a court

date that [did] not exist." *Id.*[4] Further, Defendant's website, as of November 28,

---

[4] The notice itself, which Plaintiffs attached to the Complaint [1] as an exhibit, told Divine that if she wished to exercise her right to appear in court, she was "summoned to appear in person at Ocean Springs Municipal Court, 3810 Bienvlle Blvd., Ocean Springs, MS 39564 from 9 AM to 2 PM on 07/01/2022." Ex. [1-1] at 1. If she had questions, she could "go to courtstatus.com or call the Community Safety Help Desk at 601-790-7005." *Id.*

2022, allegedly incorrectly told visitors that "Mississippi law states that the owner of a vehicle is responsible for insurance coverage of that vehicle, regardless of who is driving it unless the vehicle is stolen," notwithstanding the Attorney General's view, described *supra*, that no violation occurs when someone who carries liability insurance borrows a motor vehicle, even if its owner does not have insurance. *Id.* at 7 (citation omitted). As of when Plaintiffs filed their Complaint [1] on August 10, 2023, "Divine [had] paid $100 of the $300 fee for the Diversion Program" and "face[d] the possibility of further harm from Defendant's unlawful conduct, *e.g.*, suspension of her license, collection efforts, etc." *Id.* at 10.

Plaintiffs maintain that many problems existed with the validity of the allegation that Divine violated Mississippi Code Annotated 63-15-4 that the notice, titled "Uniform Traffic Ticket," Ex. [1-1] at 1, contains, *see* Compl. [1] at 8–10. Officer Ducote's affidavit states that, considering "evidence of the violation that [he had] personally confirmed as a duly sworn officer and based on [his] inspection of recorded images and government information," he had "determined probable cause that [the] vehicle was in violation" of the statute. Ex. [1-1] at 1. The notice contains an image of Divine's license plate and a citation number. *See id.* Plaintiffs, however, assert the following issues with Officer Ducote's affidavit:

(1) "Officer Ducote does not aver that, at the time of the alleged violation, he executed a traffic stop and determined the vehicle was uninsured."

(2) "Officer Ducote does not aver that, at the time of the alleged violation, any other police officer stopped Divine and determined that the vehicle was uninsured."

  (3) "Officer Ducote does not state a time or date when he allegedly 'confirmed' that the license plate image was evidence of the violation."

  (4) "Officer Ducote does not state a time or date when he determined that the image established probable cause of a violation."

  (5) "Officer Ducote does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the Ticket to Divine as required by Miss. Code Ann. § 63-9-21(6)."

Compl. [1] at 9.

  The Complaint [1] contains similar allegations about the notices sent to Plaintiffs Merchant and Jones. *See id.* at 10–13. Merchant received his notice in early August 2022. *Id.* at 10. It contains an affidavit by Officer Beasley[5] of the OSPD, which states that he found probable cause that, on June 12, 2022, Merchant violated Mississippi Code Annotated § 63-15-4 based on a recorded image of the license plate on a motor vehicle Merchant owned and his "inspection" of "government records." Ex. [1-2]. The notice provides the same options that Divine's notice provided her, although Merchant's court date was not scheduled until September 2, 2022. Compl. [1] at 11; *see* Ex. [1-2]. Merchant has paid the $300 fee for Defendant's Diversion Program. Compl. [1] at 11. Plaintiffs also allege that Merchant's citation was invalid because of the same five issues they identified with Officer Beasley's affidavit against Divine. *Compare* Compl. [1] at 10–11, *with id.* at 8–10.

---

[5] All the notices contain the police officers' last names in print, and full names in ink signatures. *See* Ex. [1-1], Ex. [1-2], Ex. [1-3]. Plaintiffs only mentioned Officer Ducote's full name in their Complaint [1], *see* Compl. [1] at 8–13, presumably because his ink signature is more legible than Officers Beasley's or Chandler's, *see* Ex. [1-1], Ex. [1-2], Ex. [1-3].

Jones received his notice "[i]n early May 2023," and it "purports to be a ticket from the City of Senatobia, Mississippi Police Department" ("SPD"). *Id.* at 12. Plaintiffs allege the notice "contains an image of Jones' license plate that is," according to an affidavit by SPD Officer Chandler, evidence of a violation of Mississippi Code Annotated § 63-15-4. *See id.* The notice provides the same three options as Divine's and Merchant's notices did, and Jones's court date was scheduled for May 9, 2023. *See id.* at 13. Plaintiffs also allege the police officer's affidavit had the same defects as those contained in Divine's and Merchant's notices. *See id.* at 9–13. As of when Plaintiffs filed their Complaint [1], "Jones has not paid money toward the Diversion Program, but he faces the possibility of harm from Defendant's unlawful conduct, *e.g.*, suspension of his license, collection efforts, etc." *Id.* at 13. And "Defendant continues to send threatening letters to Jones." *Id.*

Plaintiffs have brought this case as a class action under CAFA.[6] *Id.* at 2; *see* 28 U.S.C. § 1332(d). Plaintiffs allege that the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) are met, *see* Compl. [1] at 13–15, and that the class should be certified under Rule 23(b)(2) for injunctive relief and under Rule 23(b)(3) for their damages claims, *see id.* at 15–16. Notably, as to numerosity, *see* Fed. R. Civ. P. 23(a)(1), Plaintiffs allege "[t]here are thousands, if not tens of thousands, of individuals in the Class," and emphasize that "Defendant mailed approximately 6000 Tickets for alleged violations in Ocean Springs, Mississippi in

---

[6] Under CAFA, federal courts have subject-matter jurisdiction over class actions based on state-law claims when there is "minimal diversity" between the plaintiff class and the defendants, *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 544 (5th Cir. 2006), the class has at least 100 members, § 1332(d)(5)(B), and the aggregate amount in controversy exceeds $5,000,000, § 1332(d)(6).

just a few months alone," a figure that "does not include Tickets issued by Defendant for other Cities," Compl. [1] at 14.

B.    Procedural history

After Plaintiffs filed their Complaint [1] alleging due process, unjust-enrichment, and abuse-of-process claims, Defendant filed a Motion [10] to Dismiss, arguing that Plaintiffs' Complaint [1] fails to state a due process claim under the Fourteenth Amendment to the Constitution, and that the Court should dismiss the remaining, pendent state-law claims under 28 U.S.C. § 1367. *See* Mem. [11] at 1, 12. Plaintiffs responded that the Complaint [1] alleges sufficient facts to state a due process claim, and regardless, the Court has subject-matter jurisdiction over Plaintiffs' state-law claims for abuse of process and unjust enrichment under CAFA. *See* Resp. [13] at 4, 13. Having reviewed the Complaint [1], the parties' submissions, and relevant legal authority, the Court has determined it cannot proceed to the merits of Defendant's Motion [10] without first ensuring it retains subject-matter jurisdiction over this case.

## II. DISCUSSION

A.    Federal subject-matter jurisdiction generally

Federal courts are courts of limited jurisdiction and "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The "court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary." *Green Valley Spec.*

*Util. Dist. v. City of Schertz*, 969 F.3d 460, 480 (5th Cir. 2020) (en banc). Under 28 U.S.C. § 1331, a federal court has original subject-matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

Further, Article III of the United States Constitution permits a federal court to exercise "[p]endent jurisdiction" over state-law claims that are closely related to a claim over which the court has subject-matter jurisdiction when "the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). To that end, 28 U.S.C. § 1367 provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

§ 1367(a).

But "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. Section 1367(c) provides that

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). In deciding whether to exercise pendent jurisdiction over state-law claims, the district court "look[s] to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011) (first citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), then citing *Carnegie– Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). While "no single factor is dispositive," *Mendoza*, 532 F.3d at 346, the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed," *Enochs*, 641 F.3d at 161 (quotations and citations omitted).

In addition, federal courts have subject-matter jurisdiction over sufficiently large class actions based on state-law claims when there is "minimal diversity" between the plaintiff class and the defendants. *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 544 (5th Cir. 2006). Under CAFA:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> > (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> >
> > (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> >
> > (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). The class must also have at least 100 members, *see* § 1332(d)(5)(B), and not be precluded by the exceptions set forth in § 1332(d)(4).

B.     The *Rooker-Feldman* doctrine

As discussed above, "federal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). No court of the United States, other than the United States Supreme Court, can entertain a proceeding to reverse, modify, or otherwise engage in an appellate review of, a state court decision. *See Johnson v. De Grandy,* 512 U.S. 997, 1005–06 (1994); *Matter of Reitnauer,* 152 F.3d 341, 343 (5th Cir. 1998); 28 U.S.C. § 1257 (establishing Supreme Court jurisdiction to review the "[f]inal judgments or decrees rendered by the highest court of a State"). This jurisdictional rule forms the basis of the abstention principle first stated in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923), and restated in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983), that is often referred to as the *Rooker-Feldman* doctrine.

Under the *Rooker-Feldman* doctrine, a federal district court lacks jurisdiction to entertain collateral attacks on a state court judgment. *Liedtke v. State Bar of Tex.,* 18 F.3d 315, 317 (5th Cir. 1994). The doctrine prevents a federal district court from reviewing, modifying, or nullifying a state court judgment or order. *Weekly v. Morrow,* 204 F.3d 613, 615 (5th Cir. 2000). The *Rooker-Feldman* bar applies to actions that explicitly seek review of state court decisions, and to actions "in which 'the constitutional claims presented [in federal court] are inextricably intertwined with the state court's' grant or denial of relief." *Hale v. Harney,* 786 F.2d 688, 691

(5th Cir. 1986) (alteration in original) (quoting *Feldman,* 460 U.S. at 482 n.16), *overruled on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Johnson,* 512 U.S. at 1005–06 (under *Rooker-Feldman,* "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a [federal] district court"). "[T]he doctrine applies only 'after the state proceedings [have] ended,'" and "[s]tate proceedings have not ended . . . if state appeals are still pending." *Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022) (quoting *Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.*, 785 F. Supp. 2d 579, 589–90 (E.D. La. 2011)).

For *Rooker-Feldman* to apply, the plaintiff's alleged injury must be based on a state court decision, not "an allegedly illegal act or omission by an adverse party." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382–83 (5th Cir. 2013) (quoting *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003)). But the *Rooker-Feldman* doctrine bars claims, including against adverse parties in prior state court proceedings, to reverse state court judgments on the theory that they were fraudulently procured. *See id.* at 383 n.3 (citing *United States v. Shepherd*, 23 F.3d 923, 924–25 (5th Cir. 1994)) (other citations omitted); *see also id.* ("*Rooker-Feldman* bars a claim that a state foreclosure judgment was procured through fraud because 'reversal of the state court's foreclosure judgment would be a necessary part of the relief requested'" (quoting *Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011)).

Here, it appears that Plaintiffs may be collaterally attacking state-court proceedings against them under Mississippi Code Annotated § 63-15-4. Divine and

Merchant allege that they received tickets from the OSPD, and Jones claims that he received a ticket from the SPD, that contained sworn affidavits from police officers explaining the basis for the citations.  *See* Compl. [1] at 8–13; *see also* Ex. [1-1] (Divine's ticket), Ex. [1-2] (Merchant's ticket), Ex. [1-3] (Jones's ticket).  As of the filing of the Complaint [1], Divine had paid $100 out of $300 of the diversion fee, Merchant had paid the entire fee, and Jones had refused to respond to the ticket, resulting in his continued receipt of "threatening letters" from Defendant.  Compl. [1] at 9, 11, 13.

A violation of Mississippi Code Annotated § 63-15-4 is a state crime, and Plaintiffs allege that the tickets for violating the statute they received did not provide fair notice, and thus due process, in proceedings against them.  *See id.* at 8–13.  While Plaintiffs bring their claims against Securix based on its contract to provide enforcement services for the cities of Ocean Springs and Senatobia, they focus substantial amounts of their Complaint [1] on asserting defects in the tickets they received from the OSPD and SPD and the bases for probable cause that they violated Mississippi Code Annotated § 63-15-4.  *See id.*  Among other things, they assert that the officers' affidavits failed to assert proper grounds for probable cause, and that the officers invalidly sent them tickets because they did not conduct lawful stops before doing so.  *See id.* at 8–13.  For damages, Plaintiffs demand the return of diversion fees Defendant collected, *id.* at 17–19, which it may have collected on behalf of the cities of Ocean Springs and Senatobia pursuant to their law enforcement policies, given that "Defendant receives all fee payments and then

remits a portion to the City," *id.* at 2. Plaintiffs also seek "[a] judgment declaring that Defendant has committed the violations of the law alleged in this action and an injunction forbidding any future violations." *Id.* at 19.

Regardless of the merits of Plaintiffs' claims that the tickets they received were or may be invalid, to the extent that any proceedings arising out of their citations have concluded with judgments in judicial proceedings, *see Miller*, 35 F.4th at 1012, Plaintiffs cannot "in substance" collaterally attack the results of those proceedings by filing this case in federal court, *see Johnson*, 512 U.S. at 1005–06 (under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a [federal] district court"); *see also Hale*, 786 F.2d at 691 (discussing how *Rooker-Feldman* applies to actions "in which 'the constitutional claims presented [in federal court] are inextricably intertwined with the state court's' grant or denial of relief" (alteration in original) (quoting *Feldman,* 460 U.S. at 482 n.16)).

Accordingly, the Court will direct that Plaintiffs show cause in writing whether any state court proceedings have been brought against each Plaintiff and the status and outcomes of any such proceedings. Plaintiffs' response should inform the Court of how the diversion program works, the nature of any diversion agreements that Plaintiffs signed, the status of each Plaintiff's participation in any diversion program, and the status of the state court proceedings against each Plaintiff.[7] Plaintiffs' response should also, in turn, address whether the *Rooker-*

---

[7] Mississippi has enacted a statute establishing a diversion program. *See* Miss. Code Ann. § 99-15-101, *et seq.* Under it,

*Feldman* doctrine precludes this Court from exercising subject-matter jurisdiction over this case.

C.    <u>*Younger* abstention</u>

According to the abstention doctrine first stated in *Younger v. Harris,* "federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted." *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing *Younger v. Harris,* 401 U.S. 37 (1971)). "On the same day that *Younger* was decided, the Court expanded the rule to apply to suits for injunctive relief." *Id.* (citing *Samuels v. Mackell*, 401 U.S. 66 (1971)). *Younger* based its holding in part on "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44. Beyond

---

An offender who enters an intervention program shall:
(a) Waive, in writing and contingent upon his successful completion of the program, his or her right to a speedy trial;
(b) Agree, in writing, to the tolling while in the program of all periods of limitation established by statutes or rules of court;
(c) Agree, in writing, to the conditions of the intervention program established by the district attorney which shall not require or include a guilty plea;
(d) In the event there is a victim of the crime, agree, in writing, to make restitution to the victim within a specified period of time and in an amount to be determined by the district attorney and approved by the court; and
(e) Agree, in writing, to waive extradition.
Miss. Code Ann. § 99-15-115. "In the event an offender successfully completes a pretrial intervention program, the court shall make a noncriminal disposition of the charge or charges pending against the offender," Miss. Code Ann. § 99-15-123(1), meaning "the dismissal of [the] criminal charge without prejudice to the state to reinstate criminal proceedings on motion of the district attorney," Miss. Code Ann. § 99-15-103(b).

traditional equitable principles, "the most important source for the abstention

doctrine it was enunciating" was "Our Federalism," which demands adherence to

> the notion of 'comity,' that is, a proper respect for state functions, a
> recognition of the fact that the entire country is made up of a Union of
> separate state governments, and a continuance of the belief that the
> National Government will fare best if the States and their institutions
> are left free to perform their separate functions in their separate ways.

*Texas Ass'n of Bus.*, 388 F.3d at 519 (quoting *Younger*, 401 U.S. at 44).

A court must find three conditions present to apply *Younger* abstention: "(1)

the federal proceeding would interfere with an 'ongoing state judicial proceeding';

(2) the state has an important interest in regulating the subject matter of the claim;

and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise

constitutional challenges.'" *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 716 (5th

Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457

U.S. 423, 432 (1982)). "[T]o decide whether the federal proceeding would interfere

with the state proceeding," a Court should "look to the relief requested and the

effect it would have on the state proceedings," and "[i]nterference is established

whenever the requested relief would interfere with the state court's ability to

conduct proceedings, regardless of whether the relief targets the conduct of a

proceeding directly." *Id.* at 717 (quotation omitted). Under Fifth Circuit precedent,

"[t]he *Younger* doctrine requires dismissal of suits for injunctive and declaratory

relief, but not suits for money damages." *Davis v. Andrews*, No. 4:23-CV-01491,

2024 WL 310215, at *5 (S.D. Tex. Jan. 26, 2024) (first citing *Google, Inc. v. Hood*,

822 F.3d 212, 222 (5th Cir. 2016), then citing *Alexander v. Ieyoub*, 62 F.3d 709, 713

(5th Cir. 1995)).

19

For *Younger* to apply, the ongoing state proceeding need not necessarily be criminal: "*Younger*'s applicability has been expanded to include certain kinds of civil and even administrative proceedings that are 'judicial' in nature," *Texas Ass'n of Bus.*, 388 F.3d at 520, including proceedings where "[t]he State is a party to the [state-court] proceeding, and the proceeding is both in aid of and closely related to criminal statutes," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975); *see Sprint Commnc'ns., Inc. v. Jacobs*, 571 U.S. 69, 77–78 (2013) (citing *Huffman*, 420 U.S. at 604). A proceeding is not ongoing merely because a state agency has sent cease-and-desist orders to the federal court plaintiff. *See Google*, 822 F.3d at 223 (citing *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995)). But "the Supreme Court [has] held that . . . [federal] district courts should have abstained based on *Younger*" when "the regulating [state] agencies . . . had investigated the allegations, made determinations that probable cause existed, and served formal charges on the entities." *La. Debating & Literary Ass'n*, 42 F.3d at 1490 (first citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 623–24 (1986), then citing *Middlesex*, 457 U.S. at 428). The Fifth Circuit has also held that *Younger* abstention applies to Texas grand jury proceedings, which "bear a very close relationship with criminal trial proceedings." *Texas Ass'n of Bus.*, 388 F.3d at 521.

Further, "abstention may be raised by the court *sua sponte*." *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999) (citing *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976)). But

courts may disregard the *Younger* doctrine when: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived.

*Texas Ass'n of Bus.*, 388 F.3d at 519 (quoting *Younger*, 401 U.S. at 49). These three exceptions are "narrowly delimited." *Bice*, 677 F.3d at 716 (quoting *Texas Ass'n of Bus.*, 388 F.3d at 519).

Here, Plaintiffs, who allege that they have received tickets containing citations for violating state law, seek "[a] judgment declaring that Defendant has committed the violations of the law alleged in this action and an injunction forbidding any future violations." Compl. [1] at 19. Depending on the status of any proceedings in state court for violations of Mississippi Code Annotated § 63-15-4, this relief may involve "requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time [Plaintiffs'] federal action [was] instituted." *Texas Ass'n of Bus.*, 388 F.3d at 518.

Accordingly, it appears that *Younger* may possibly be applicable here and as such, the Court will direct that Plaintiffs show cause in writing whether any state court proceedings have been brought against each Plaintiff and the status and results of any such proceedings. Plaintiffs' response should inform the Court of how the diversion program works, the nature of any diversion agreements that Plaintiffs signed, and the status of each Plaintiff's participation in any diversion program. Plaintiffs' response should also address whether the elements of *Younger* abstention are present in this case. *See id.* at 518–20.

III. <u>CONCLUSION</u>

**IT IS, THEREFORE, ORDERED** that, Plaintiffs are directed, **on or before September 5, 2024**, to show cause in writing whether any state court proceedings have been brought against each Plaintiff and the status and results of any such proceedings, and, accordingly, whether the *Rooker-Feldman* doctrine bars their claims, or whether *Younger* abstention applies to any of Plaintiffs' claims. Plaintiffs' response should inform the Court of how the diversion program works, the nature of any diversion agreements that Plaintiffs signed, and the status of each Plaintiff's participation in any diversion program. If Plaintiffs fail to do so, the Court may dismiss this case sua sponte without prejudice for lack of federal subject-matter jurisdiction, and without further notice to Plaintiffs.

**SO ORDERED** this the 23rd day of August, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE