

August 30, 2024

William C. Purdie, Esq.
Attorney, City of Clinton
Post Office Box 156
Clinton, Mississippi 39060

    Re:    ALPR Motor Vehicle Insurance Enforcement Program

Dear Mr. Purdie:

The Office of the Attorney General has received your request for an official opinion.

## Background

According to your request, the city of Clinton (the "City") has been approached by a private company (the "Vendor") with a proposal to implement an automatic license plate reader-based motor vehicle insurance enforcement program. As proposed, the program would operate in the following manner: the Mississippi Department of Public Safety ("DPS") would provide the City and the Vendor with information from the motor vehicle insurance verification system ("MVIVS") database on a weekly basis. The Vendor would then use an automatic license plate reader ("ALPR") system to check the insurance status of every vehicle that passes the reader against the data provided by DPS. When a vehicle is identified as uninsured, a certified law enforcement officer would be notified of the uninsured vehicle along with an image of the vehicle's license plate. The officer would review the images and the MVIVS database to determine whether probable cause exists. The violation would be secondarily verified, and then the motor vehicle owner would be mailed a citation for violation of Mississippi's mandatory insurance laws.

Upon receipt of a citation, the motor vehicle owner may choose to enter a diversion program requiring the vehicle owner to:

1. Agree to participate in the diversion program
2. Obtain liability insurance
3. Take an online course covering Mississippi's liability insurance requirements
4. Pay a $315 fee to be split between the Vendor, the City, and DPS
5. Agree to maintain liability insurance



If the motor vehicle owner successfully completes the diversion program, the charge will be dismissed. Alternatively, the owner may choose to address the citation through municipal court. In that instance, the Vendor would have no further involvement in the case.

## Question Presented

Does the City have the legal authority to institute and operate an ALPR-based motor vehicle insurance enforcement program in accordance with the provisions outlined above?

## Brief Response

The City is not explicitly prohibited by Mississippi law from initiating and utilizing an ALPR-based motor vehicle insurance enforcement program. However, certain factual and legal determinations, which are outside the scope of this opinion, must be considered in regard to the proposed program, including but not limited to, the proposed uses of MVIVS.

## Applicable Law and Discussion

To begin, this opinion concerns matters of state law only and does not address U.S. Constitutional or federal law or any contractual considerations.

In regard to municipalities utilizing ALPR cameras, Mississippi Code Annotated Section 17-25-19 provides:

> (1)(a) Neither the board of supervisors of any county nor the governing authority of any municipality shall adopt, enact or enforce any ordinance authorizing the use of automated recording equipment or system *to enforce compliance with traffic signals, traffic speeds or other traffic laws, rules or regulations on any public street, road or highway within this state* or to impose or collect any civil or criminal fine, fee or penalty for any such violation.
>
> . . .
>
> (2) For the purposes of this section, the term "automated recording equipment or system" means a camera or optical device installed to work in conjunction with a traffic control signal or radar speed detection equipment or both and designed to record images that depict the license plate attached to the rear of a motor vehicle that is not operated in compliance with instructions of the traffic control signal or the posted speed limit.

(emphasis added). In sum, Section 17-25-19 prohibits the use of ALPRs that work in conjunction with traffic signals or radar equipment. This office addressed Section 17-25-19 in MS AG Op., *Sorrell* (Apr. 17, 2009), and opined that the statute did not completely prohibit the use of ALPR cameras but rather allowed municipalities to "continue to utilize cameras mounted on poles . . . for enforcement of criminal activity within the municipality as long as the cameras are not used in conjunction with a traffic control signal or radar speed detection equipment or both <u>and designed</u>

to record images of a license plate." *Id.* at *1 (emphasis in original). Furthermore, Section 17-25-19 only addresses traffic laws, rules, and regulations—not motor vehicle insurance requirements.

Next, the Public Safety Verification and Enforcement Act is set forth in Sections 63-16-1, *et seq*. In accordance with Section 63-16-3 therein, DPS established MVIVS, a database for verifying a motor vehicle's compliance with Mississippi's mandatory insurance laws. Section 61-16-3(3) sets forth various statutory requirements for MVIVS. Among these, Section 63-16-3(3)(c) provides that MVIVS must "[b]e accessible, without fee, to authorized personnel of the department, the courts, law enforcement personnel, *and other entities authorized by the department* under the provisions of Section 63-16-7." (emphasis added).

Section 63-16-7 gives DPS broad authority over the administration and enforcement of MVIVS and grants DPS the power to enact rules for the same:

> (1) The Department of Public Safety, hereinafter referred to in this section as "department," shall administer and enforce the provisions of this chapter, as applicable, and shall make rules necessary for the administration of the motor vehicle insurance verification system created under Section 63-16-3.
>
> . . .
>
> (3) The department may adopt additional rules to:
>
> (a) Assist authorized users in interpreting responses received from the motor vehicle insurance verification system and determining the appropriate action to be taken as a result of a response; and
>
> (b) Otherwise clarify system operations and business rules.

In your provided scenario, the third-party Vendor would use information from MVIVS, provided by DPS, and an ALPR system to verify insurance coverage of every vehicle that passes the ALPR readers. A law enforcement officer or authorized employee of a law enforcement agency would then go behind the Vendor to verify the insurance status of all motor vehicles flagged as uninsured.

In summary, information recovered from MVIVS may be released to private entities, such as the Vendor, if such action is authorized by DPS in accordance with its rules as set forth in Sections 63-16-3 and 63-16-7. More specific to your proposed scenario, as highlighted above, Section 63-16-3(3)(c) states that MVIVS must "[b]e accessible, without fee, to authorized personnel of the department, the courts, law enforcement personnel, and *other entities authorized by the department* under the provisions of Section 63-16-7." (emphasis added).

Additionally, Section 63-16-5 permits a law enforcement officer or authorized employee of a law enforcement agency to access MVIVS in relation to a traffic stop, with certain limitations. Specifically, Section 63-16-5 prohibits law enforcement officers from using MVIVS as the sole cause for a stop:

> (1) A law enforcement officer or authorized employee of a law enforcement agency may, during the course of a traffic stop or accident investigation, access the verification system established under Section 63-16-3 to verify whether a motor vehicle is covered by a valid motor vehicle liability policy in at least the minimum amounts required under Section 63-15-3(j).
>
> . . .
>
> (3) *Except upon reasonable cause to believe that a driver has violated another traffic regulation or that the driver's motor vehicle is unsafe or not equipped as required by law*, a law enforcement officer may not use the verification system to stop a driver for operating a motor vehicle in violation of this chapter.

(emphasis added). Further, while Section 63-15-4(3) permits the use of MVIVS "at a roadblock where all passing motorists are checked as a method to enforce traffic laws," that section also states that "no driver shall be stopped or detained solely for the purpose of verifying that the motor vehicle is covered by liability insurance in the amounts required under Section 63-15-3(j) unless the stop is part of such roadblock."

Presumably, these provisions were enacted to prevent illegal searches. This said, whether the scenario you provide would constitute a "traffic stop" as contemplated by Section 63-16-5 or a "roadblock" as contemplated by Section 63-15-4 is a mixed question of fact and law upon which this office may not opine. *See* Miss. Code Ann. § 7-5-25. Nonetheless, if it is determined that such use does not constitute a "traffic stop" as provided in Section 63-16-5 and does not constitute an unlawful use of a "roadblock" as provided in Section 63-15-4, there are no other provisions within the Public Safety Verification and Enforcement Act that limit an entity authorized by the department or a law enforcement officer's ability to access MVIVS. Rather, as noted above, DPS is provided broad statutory authority over the administration and enforcement of MVIVS.

Last, we address the proposed diversion program, including the fee. Again, we note that this office may not opine upon any contractual matters. Accordingly, this opinion only addresses Mississippi statutory considerations.

Specific penalties for the violation of Mississippi's mandatory insurance laws are set forth in Sections 63-15-4(4) and 63-16-13(1). These statutes likewise specify where funds from such fines shall be deposited. Section 63-15-4(4) provides:

> Failure of the owner or the operator of a motor vehicle to have the insurance card in the motor vehicle, or to display the insurance card by electronic image on a cellular phone or other type of electronic device, is a misdemeanor and, upon conviction, *is punishable by a fine of One Hundred Dollars ($100.00)* and suspension of driving privilege for a period of one (1) year or until the owner of the motor vehicle shows proof of liability insurance that is in compliance with the liability limits required by Section 63-15-3(j) and has paid the fines and assessments imposed and the driver's license reinstatement fees imposed by the

> Department of Public Safety. . . . *If such fines are levied in a municipal court, the funds from such fines shall be deposited in the general fund of the municipality. If such fines are levied in any of the courts of the county, the funds from such fines shall be deposited in the general fund of the county.* A person convicted of a criminal offense under this subsection (4) shall not be convicted of a criminal offense under Section 63-16-13(1) arising from the same incident.

(emphasis added). *See also* Miss. Code Ann. § 63-16-13(1) (providing same). Unlike Section 63-9-11, which specifically provides first-time violators of Chapter 3, 5, or 7 of Title 63 the option to complete a traffic safety violator course, Sections 63-15-4(4), relating to the failure to have proof of insurance, and 63-16-13(1), relating to the failure to maintain insurance, while not prohibiting such a diversion program, also do not specifically contemplate a diversion program.

Further, in addition to assessments to the state general fund "from each person upon whom a court imposes a fine or other penalty for any violation in Title 63," Section 99-19-73 sets forth an additional state assessment for persons violating the Mississippi motor vehicle liability insurance requirements specifically:

> **Motor vehicle liability insurance violations.** In addition to any monetary penalties and any other penalties imposed by law, there shall be imposed and collected the following state assessment in addition to all other state assessments due under this section from each person upon whom a court imposes a fine or other penalty for any violation of Section 63-15-4(4) or Section 63-16-13(1):
>
> Uninsured Motorist Identification Fund:
>
> First offense: $200.00
>
> Second offense: $300.00
>
> Third or subsequent offense: $400.00

Miss. Code Ann. § 99-19-73(8)(c).

Section 99-19-73(9) clarifies that even "[i]f a fine or other penalty imposed is suspended, in whole or in part, such suspension shall not affect the state assessment under this section. *No state assessment imposed under the provisions of this section may be suspended or reduced by the court.*" (emphasis added). This is to say, state assessments for failure to have motor vehicle liability insurance are statutorily mandatory, not discretionary, whether imposed by a court or not. Accordingly, any citation would need to account for these statutory requirements. Whether the program you have summarized here includes all such statutory requirements is a question of fact upon which this office may not opine.

If this office may be of any further assistance to you, please do not hesitate to contact us.

                                      Sincerely,

                                      LYNN FITCH, ATTORNEY GENERAL

                      By:    */s/ Maggie Kate Bobo*

                                      Maggie Kate Bobo
                                      Special Assistant Attorney General

OFFICIAL OPINION