## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AMY DIVINE, KARL MERCHANT, AND COLUMBUS JONES,** *on behalf of themselves and all others similarly situated* | § § § § § § | **PLAINTIFFS** |
| **v.** | § § § § | **Civil No. 1:23-cv-196-HSO-BWR** |
| **SECURIX, LLC** | § § | **DEFENDANT** |

## <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SECURIX, LLC'S MOTION [10] TO DISMISS</u>

This matter comes before the Court on Defendant Securix, LLC's

("Defendant" or "Securix") Motion [10] to Dismiss.  The Court has reviewed the

parties' submissions and Plaintiffs Amy Divine, Karl Merchant, and Columbus

Jones's (collectively "Plaintiffs") class-action Complaint [1], and for the reasons that

follow, it will grant the Motion [10] in part and deny it in part, in that Plaintiffs'

federal procedural due process claims will be dismissed with prejudice, but

Defendant's request to dismiss the pendent state-law claims will be denied without

prejudice because Defendant has not addressed the merits of Plaintiffs' state-law

claims or whether the Court has subject-matter jurisdiction under the Class Action

Fairness Act.

## I. BACKGROUND

A.   Plaintiffs' Complaint [1]

1.   The insurance verification program

In this suit brought pursuant to 42 U.S.C. § 1983 and the Class Action

Fairness Act ("CAFA"),[1] Plaintiffs Amy Divine, Karl Merchant, and Columbus

Jones (collectively "Plaintiffs"), challenge how Defendant Securix, LLC

("Defendant"), pursuant to contracts with cities in Mississippi and elsewhere, uses

automated license plate readers ("ALPRs") to identify unlawfully uninsured vehicles

and then send citations to the vehicles' owners. *See* Compl. [1] at 1–4.  The

Mississippi statute mandating that drivers carry liability insurance provides:

> Every motor vehicle operated in this state shall have a motor vehicle
> liability insurance policy that covers the vehicle and is in compliance
> with the liability limits required by Section 63-15-3(j).  The insured
> parties shall be responsible for maintaining the insurance on each motor
> vehicle.

Miss. Code Ann. § 63-15-4(2)(a).  The "[f]ailure of the owner or the operator of a

motor vehicle" to prove she has the required insurance coverage "is a misdemeanor

and, upon conviction, is punishable by a fine of One Hundred Dollars ($100.00) and

suspension of driving privilege for a period of one (1) year or until the owner of the

motor vehicle shows proof of [the required] liability insurance" and has "paid the

fines and assessments imposed and the driver's license reinstatement fees imposed

by the Department of Public Safety."  Miss. Code Ann. § 63-15-4(4).  Mississippi law

also requires "[t]he Department of Public Safety, . . . in cooperation with the

---

[1] Pub. L. No. 109–2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.).

Commissioner of Insurance and the Department of Revenue, [to] establish an accessible common carrier-based motor vehicle insurance verification system to verify the compliance of a motor vehicle with" Mississippi Code Annotated § 63-15-4.  Miss. Code Ann. § 63-16-3(1).

To enforce the insurance coverage requirements under Mississippi Code Annotated § 63-15-4, some cities in Mississippi have contracted with Defendant to "implement Defendant's system," which Plaintiffs call a "Diversion Program," "for detecting, ticketing, and collecting fees from vehicle owners that Defendant believes are uninsured."  Compl. [1] at 1.  The ALPRs that Defendant uses to identify vehicles without required insurance coverage "capture computer-readable images of license plates that allow Defendant to compare the plate numbers against various databases to determine whether a particular vehicle is insured or not," and "can be mounted on police cars, road signs, or traffic lights."  *Id.* at 4.  Plaintiffs allege that Defendant "takes pictures of license plates, unlawfully runs the information through the State's verification system, and sends out Tickets" to the registered owners of vehicles when the state's verification system shows that the vehicle was uninsured.  *Id.* at 6.  According to Plaintiffs' Complaint [1], because Defendant assists in cities' enforcement of traffic laws, it is acting under color of law.  *See* Compl. [1] at 2, 16; 42 U.S.C. § 1983.[2]

---

[2] "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process."  *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  Both the Fourteenth Amendment and § 1983 only "protect[] against acts attributable to a State, not those of a private person."  *Lindke v. Freed*, 601 U.S. 187, 194 (2024); *see id.* at 195 ("[T]he statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." (quoting parenthetically *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982))).

The notices Defendant sends to vehicle owners "purport[] to be . . . legitimate traffic ticket[s]," but Plaintiffs dispute that they are legitimate citations.  Compl. [1] at 4 & n.2.  The Complaint [1] alleges that the notices "represent[] that [they were] issued by the City's police department, and [they do] not mention Defendant's name."  *Id.* at 6.  Each notice "contains what appears to be a sworn affidavit from a police officer stating that the owner has violated the state's uninsured vehicle law" and "states the date and time of the alleged infraction."  *Id.*

A notice will provide a vehicle owner with three options to avoid the suspension of her license: (1) "Provide proof of insurance at the time of the violation"; (2) "Enter the Diversion Program by paying a fee"; or (3) "Appear in court."  *Id.* at 6–7.  Plaintiffs assert that although a notice will "provide[] a court date," it "is not filed with a court, so there is no actual court date."  *Id.* at 6.  "The owner can provide proof of insurance over the telephone or by visiting a website," and "Defendant, not the City, maintains the telephone number and website."  *Id.* at 7.  So, "a vehicle owner calling the telephone number will not reach the City, the police department, or a court, but Defendant's 'help desk.'"  *Id.*

According to Plaintiffs, while a notice will contain an affidavit from a police officer swearing that he used the state's insurance verification system to conclude that probable cause existed that the vehicle owner violated Mississippi Code Annotated § 63-15-4, probable cause could not have existed based only upon checking whether the owner of a vehicle had properly insured the vehicle.  *See id.* at 5.  That is so, Plaintiffs reason, because "ALPRs identify the registered owner of the

vehicle only and not the driver," *id.*, even though "[t]he Mississippi Attorney General has advised that 'if a person is driving someone else's vehicle, and neither the operator or the vehicle owner has insurance, the *operator* of the vehicle,'" as opposed to its owner, "'is in violation of the law and should be cited,'" *id.* at 7–8 (emphasis added) (quoting Op. Att'y Gen. No. 2002-0422, 2002 WL 31169193 (Aug. 2, 2002)).  Plaintiffs maintain that the operator would be the person in violation of the law in such a scenario—for example, if the operator borrowed the vehicle[3]— because the Mississippi Attorney General has issued an advisory opinion stating:

> [A] violation of Section 63-15-4 occurs only when both the owner and operator fail to have proof of insurance.  Therefore, if the operator has proof of insurance which covers his operation of the vehicle but the owner does not, there is no violation.  Likewise, if the owner of the motor vehicle has proof of insurance in the vehicle but the operator does not, there is still no violation.

*Id.* at 5 (quoting Op. Att'y Gen. No. 2015-00309, 2015 WL 6121922 (Sept. 4, 2015) (quoting Op. Miss. Att'y Gen., No. 2001-0052, 2001 WL 283638 (Feb. 9, 2001))).  Plaintiffs conclude that, "[b]y relying solely on information obtained from vehicle owner records, Defendant lacked probable cause to send the Tickets to vehicle owners."  *Id.*

Plaintiffs also contend that the notices sent to vehicle owners were invalid citations because they were not issued "in conjunction with a lawful stop."  *Id.* at 6. "Law enforcement officers may issue a citation for violation of the vehicle insurance

---

[3] The question put to the Mississippi Attorney General's office in its first opinion on this issue was:
> Would the operator of a motor vehicle be in violation of Section 63-15-4(4) where the operator of a borrowed motor vehicle has insurance on all of the operator's owned vehicles, but the owner of the motor vehicle being driven does not have insurance on the vehicle being driven and there is no proof of insurance in the vehicle?

Op. Miss. Att'y Gen., No. 2001-0052, 2001 WL 283638, at *1 (Feb. 9, 2001).

statute only in connection with a roadblock used to enforce traffic laws or upon stopping a vehicle for some other statutory violation." *Id.* at 5–6 (first citing Miss. Code Ann. § 63-15-4(3), then citing Miss. Code Ann. § 63-16-5(3)).  Plaintiffs point out how Mississippi law provides that "no driver shall be stopped or detained solely for the purpose of verifying that the motor vehicle is covered by liability insurance in the amounts required under Section 63-15-3(j) unless the stop is part of [a] roadblock" conducted pursuant to Mississippi Code Annotated § 63-15-4(3).  *Id.* at 6 (quoting parenthetically Miss. Code. Ann. § 63-15-4(3)).  Further, "[e]xcept upon reasonable cause to believe that a driver has violated another traffic regulation or that the driver's motor vehicle is unsafe or not equipped as required by law, a law enforcement officer may not use the [insurance] verification system to stop a driver for" failing to maintain liability insurance under Mississippi Code Annotated § 63-15-4(2).  *Id.* (quoting parenthetically Miss. Code. Ann. § 63-16-5(3)).

Plaintiffs claim that, when a vehicle owner chooses to enter the diversion program and pay a fee, "Defendant receives all fee payments and then remits a portion to the City."  Compl. [1] at 2.  This allows Defendant to profit from the program. *See id.* at 8.  Defendant has "implemented the Diversion Program for the City of Ocean Springs, Mississippi," and Ocean Springs Police Department ("OSPD") Chief Mark Dunston stated in August 2023 that, "[i]n the last couple months, [the OSPD has] identified close to 6,000 violations" with Defendant's assistance.  *Id.* (quotation and citation omitted).  Defendant also contracts with the

City of Senatobia, Mississippi, to provide ALPR services for motor vehicle insurance

verification. *Id.*

2.    <u>Plaintiffs' experience with the diversion program</u>

Turning to each Plaintiff's individual experience with Defendant's insurance

verification program, Plaintiff Divine alleges:

> On or about July 1, 2022, [she] received an envelope via U.S. Mail
> containing two documents: (1) a Ticket titled, "FINAL NOTICE – PRIOR
> TO COURT APPEARANCE," which purports to be a ticket from the
> Ocean Springs Police Department . . . and (2) an April 6, 2022[,] letter
> bearing Police Chief Mark Dunston's signature.

*Id.* The notice Divine received "states that it is a Uniform Traffic Ticket. But [it]

does not, in fact or in law, comply with Mississippi's Uniform Traffic Ticket statute,

Miss. Code Ann. 63-9-21." *Id.* The notice also "contains what appears to be a sworn

affidavit from Officer Michael Ducote of the OSPD," who "swears that, on March 30,

2022, Divine violated Miss. Code Ann. § 63-15-4 by operating an uninsured vehicle

on a public roadway." *Id.* at 8–9. The notice then

> threatens the suspension of Divine's driver's license unless she does one
> of three things: (1) provide proof of insurance at the time of the violation;
> (2) enter the Diversion Program and pay a $300 fee by July 1, 2022 (the
> same day Divine received the Ticket); (3) or appear in court.

*Id.* at 9. Defendant "created and maintains the telephone number and website" the

notice provided for Divine to demonstrate proof of insurance. *Id.* at 10.

Concerning the July 1, 2022 court date, Plaintiffs allege that "no case was

ever docketed with the court," such that the notice "'summon[ed]' Divine to a court

date that [did] not exist." *Id.*[4] Further, as of November 28, 2022, Defendant's

---

[4] The notice itself, which Plaintiffs attached to the Complaint [1] as an exhibit, told Divine that if she

website allegedly incorrectly told visitors that "Mississippi law states that the owner of a vehicle is responsible for insurance coverage of that vehicle, regardless of who is driving it unless the vehicle is stolen," notwithstanding the Attorney General's view, described *supra*, that no violation occurs when someone who carries liability insurance borrows a motor vehicle, even if its owner does not have insurance. *Id.* at 7 (citation omitted). As of when Plaintiffs filed their Complaint [1] on August 10, 2023, "Divine [had] paid $100 of the $300 fee for the Diversion Program" and "face[d] the possibility of further harm from Defendant's unlawful conduct, *e.g.*, suspension of her license, collection efforts, etc." *Id.* at 10.

Plaintiffs maintain that many problems existed with the validity of the allegation that Divine violated Mississippi Code Annotated 63-15-4 that the notice, titled "Uniform Traffic Ticket," Ex. [1-1] at 1, contains, *see* Compl. [1] at 8–10. Officer Ducote's affidavit states that, considering "evidence of the violation that [he had] personally confirmed as a duly sworn officer and based on [his] inspection of recorded images and government information," he had "determined probable cause that [the] vehicle was in violation" of the statute. Ex. [1-1] at 1. The notice contains an image of Divine's license plate and a citation number. *See id.* Plaintiffs, however, assert the following issues with Officer Ducote's affidavit:

> (1) "Officer Ducote does not aver that, at the time of the alleged violation, he executed a traffic stop and determined the vehicle was uninsured."

---

wished to exercise her right to appear in court, she was "summoned to appear in person at Ocean Springs Municipal Court, 3810 Bienville Blvd., Ocean Springs, MS 39564 from 9 AM to 2 PM on 07/01/2022." Ex. [1-1] at 1. If she had questions, she could "go to courtstatus.com or call the Community Safety Help Desk at 601-790-7005." *Id.*

(2) "Officer Ducote does not aver that, at the time of the alleged violation, any other police officer stopped Divine and determined that the vehicle was uninsured."

(3) "Officer Ducote does not state a time or date when he allegedly 'confirmed' that the license plate image was evidence of the violation."

(4) "Officer Ducote does not state a time or date when he determined that the image established probable cause of a violation."

(5) "Officer Ducote does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the Ticket to Divine as required by Miss. Code Ann. § 63-9-21(6)."

Compl. [1] at 9.

The Complaint [1] contains similar allegations about the notices sent to Plaintiffs Merchant and Jones. *See id.* at 10–13. Merchant received his notice in early August 2022. *Id.* at 10. It contains an affidavit by Officer Beasley[5] of the OSPD, which states that he found probable cause that, on June 12, 2022, Merchant violated Mississippi Code Annotated § 63-15-4 based on a recorded image of the license plate on a motor vehicle Merchant owned and his "inspection" of "government records." Ex. [1-2]. The notice provides the same options that Divine's notice provided her, although Merchant's court date was not scheduled until September 2, 2022. Compl. [1] at 11; *see* Ex. [1-2]. Merchant has paid the $300 fee for Defendant's Diversion Program. Compl. [1] at 11. Plaintiffs also allege that Merchant's citation was invalid because of the same five issues they identified with

---

[5] All the notices contain the police officers' last names in print, and full names in ink signatures. *See* Ex. [1-1], Ex. [1-2], Ex. [1-3]. Plaintiffs only mentioned Officer Ducote's full name in their Complaint [1], *see* Compl. [1] at 8–13, presumably because his ink signature is more legible than Officers Beasley's or Chandler's, *see* Ex. [1-1], Ex. [1-2], Ex. [1-3].

Officer Ducote's affidavit against Divine.  *Compare* Compl. [1] at 10–11, *with id.* at 8–10.

Jones received his notice "[i]n early May 2023," and it "purports to be a ticket from the City of Senatobia, Mississippi Police Department" ("SPD").  *Id.* at 12.  The notice "contains an image of Jones' license plate that is," according to an affidavit by SPD Officer Chandler, evidence of a violation of Mississippi Code Annotated § 63-15-4.  *See id.*  The notice provides the same three options as Divine's and Merchant's notices did, and Jones's court date was scheduled for May 9, 2023.  *See id.* at 13.  Plaintiffs also allege the police officer's affidavit had the same defects as those contained in Divine's and Merchant's notices.  *See id.* at 9–13.  As of when Plaintiffs filed their Complaint [1], "Jones has not paid money toward the Diversion Program, but he faces the possibility of harm from Defendant's unlawful conduct, *e.g.*, suspension of his license, collection efforts, etc."  *Id.* at 13.  And "Defendant continues to send threatening letters to Jones."  *Id.*

Plaintiffs have brought this case as a class action under CAFA.[6]  *Id.* at 2; *see* 28 U.S.C. § 1332(d).  Plaintiffs allege that the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) are met, *see* Compl. [1] at 13–15, and that the class should be certified under Rule 23(b)(2) for injunctive relief and under Rule 23(b)(3) for their damages claims, *see id.* at 15–16.  Notably, as to numerosity, *see* Fed. R. Civ. P. 23(a)(1), Plaintiffs allege "[t]here are thousands, if not tens of

---

[6] Under CAFA, federal courts have subject-matter jurisdiction over class actions based on state-law claims when there is "minimal diversity" between the plaintiff class and the defendants, *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 544 (5th Cir. 2006), the class has at least 100 members, § 1332(d)(5)(B), and the aggregate amount in controversy exceeds $5,000,000, § 1332(d)(6).

thousands, of individuals in the Class," and that "Defendant mailed approximately 6000 Tickets for alleged violations in Ocean Springs, Mississippi in just a few months alone," a figure that "does not include Tickets issued by Defendant for other Cities," Compl. [1] at 14.

B.   Procedural history

The Complaint [1] raises due process, unjust-enrichment, and abuse-of-process claims. Defendant has filed a Motion [10] to Dismiss, arguing that the Complaint [1] fails to state a due process claim under the Fourteenth Amendment to the United States Constitution, and that the Court should dismiss the remaining, pendent state-law claims under 28 U.S.C. § 1367.  *See* Mem. [11] at 1, 12.  Plaintiffs respond that the Complaint [1] alleges sufficient facts to state a due process claim, and regardless, the Court has subject-matter jurisdiction under CAFA over Plaintiffs' state-law claims for abuse of process and unjust enrichment.  *See* Resp. [13] at 4, 13.  Having reviewed the Complaint [1], the parties' submissions, and relevant legal authority, the Court finds that Defendant's Motion [10] should be granted in part and denied in part without prejudice.

## II. DISCUSSION

A.   Federal subject-matter jurisdiction generally

Under 28 U.S.C. § 1331, a federal court has original subject-matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[A] case arises under federal law when federal law creates the cause of action asserted."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

Article III of the United States Constitution permits a federal court to exercise "[p]endent jurisdiction" over state-law claims that are closely related to a claim over which the court has subject-matter jurisdiction when "the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  To that end, 28 U.S.C. § 1367 provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

§ 1367(a).

> Section 1367(c) provides that:

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

>> (1) the claim raises a novel or complex issue of State law,

>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

>> (3) the district court has dismissed all claims over which it has original jurisdiction, or

>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c).  In deciding whether to exercise pendent jurisdiction over state-law claims, the district court "look[s] to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011) (first citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), then citing *Carnegie–*

*Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  While "no single factor is

dispositive," *Mendoza*, 532 F.3d at 346, the Fifth Circuit's "general rule is to dismiss

state claims when the federal claims to which they are pendent are dismissed,"

*Enochs*, 641 F.3d at 161 (quotations and citations omitted).

But federal courts also have subject-matter jurisdiction over sufficiently large

class actions based on state-law claims when there is "minimal diversity" between

the plaintiff class and the defendants.  *Frazier v. Pioneer Americas LLC*, 455 F.3d

542, 544 (5th Cir. 2006).  Under CAFA:

> The district courts shall have original jurisdiction of any civil action in
> which the matter in controversy exceeds the sum or value of $5,000,000,
> exclusive of interest and costs, and is a class action in which—
>
> > (A) any member of a class of plaintiffs is a citizen of a State
> > different from any defendant;
> >
> > (B) any member of a class of plaintiffs is a foreign state or a citizen
> > or subject of a foreign state and any defendant is a citizen of a
> > State; or
> >
> > (C) any member of a class of plaintiffs is a citizen of a State and
> > any defendant is a foreign state or a citizen or subject of a foreign
> > state.

28 U.S.C. § 1332(d)(2).  The class must also have at least 100 members, *see*

§ 1332(d)(5)(B), and not be precluded by the exceptions set forth in § 1332(d)(4).

B.     Motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6)

Defendant seeks dismissal under both Federal Rule of Civil Procedure

12(b)(1) and (6).  *See* Mot. [11] at 4–6.  Rule 12(b)(1) permits a defendant to move to

dismiss the plaintiff's complaint for "lack of subject-matter jurisdiction," Fed. R.

Civ. P. 12(b)(1), though "[i]f the court determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (discussing how "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived," and how courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party" (internal quotation marks and citation omitted)).  To evaluate a Rule 12(b)(1) motion, "a court may consider (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014).

Rule 12(b)(6) permits a defendant to move to dismiss a complaint because it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation omitted); *see also Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).  A claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant, *Varela v. Gonzales,* 773 F.3d 704, 707 (5th Cir. 2014) (citations omitted), a

claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions," as is the case here, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

C.     Whether to dismiss Plaintiffs' due process claims

As a threshold matter, the Court is of the view that Plaintiffs' federal due process claims fall within the Court's subject-matter jurisdiction under 28 U.S.C. § 1331, such that Rule 12(b)(1) does not control.  Accordingly, the Court has original jurisdiction, and it will therefore address Defendant's Motion under Rule 12(b)(6). lThe Fourteenth Amendment's Due Process Clause provides "a guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  In a § 1983 claim based upon procedural due process, such as Plaintiffs', "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Id.*  "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon*, 494 U.S. at 125).

1.    Whether Plaintiffs have sufficiently alleged a deprivation by state action of a
      protected interest in life, liberty, or property

A procedural due process claim requires Plaintiffs to show that any

deprivation of their rights was caused by "conduct that may be fairly characterized

as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section

1983, which "provides a remedy for deprivations of rights secured by the

Constitution and laws of the United States," and under which Plaintiffs assert their

due process claim, *see* Compl. [1] at 2, is likewise limited to "deprivation[s] tak[ing]

place 'under color of any statute, ordinance, regulation, custom, or usage, of any

State or Territory,'" *Lugar*, 457 U.S. at 924 (quoting 42 U.S.C. § 1983).  Accordingly,

both the Fourteenth Amendment and § 1983 only "protect[] against acts

attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S.

187, 194 (2024); *see id.* at 195 ("[T]he statutory requirement of action 'under color of

state law' and the 'state action' requirement of the Fourteenth Amendment are

identical." (quoting parenthetically *Lugar*, 457 U.S. at 929)).  "Because local

governments are subdivisions of the State, actions taken under color of a local

government's law, custom, or usage count as 'state' action for purposes of § 1983."

*Id.* n.1 (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690–691,

(1978)).

The state-action requirement does not require that a state official took the

action.  *See Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir.

2003).  Typically, when a plaintiff brings a § 1983 claim against a private party, the

"private party has taken the decisive step that caused the harm to the plaintiff, and

16

the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988).  The Supreme Court "has frequently emphasized that the state-action doctrine demands a fact-intensive inquiry." *Lindke*, 601 U.S. at 197.

"The Supreme Court has utilized a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State," *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005), including when "the State creates the legal framework governing the conduct; if it delegates its authority to the private actor; or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior," *Tarkanian*, 488 U.S. at 192 (citations omitted). Likewise, "[p]rivate persons, jointly engaged with state officials in the prohibited action," engage in state action subject to liability under § 1983 and the Constitution. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quotation omitted).  "Under the Supreme Court's public function test, a private entity acts under color of state law when that entity performs a function which is traditionally the exclusive province of the state." *Rosborough*, 350 F.3d at 460.  To that end, the Fifth Circuit has held that private prison-management corporations are subject to § 1983 liability as state actors because "confinement of wrongdoers—though sometimes delegated to private entities—is a fundamentally governmental function." *Id.* at 461.

Here, Plaintiffs allege that, "[a]cting under color of law," and pursuant to contracts with cities, "Defendant handles everything from detection of the alleged violation to collection of the fee," such that, "for alleged uninsured vehicle

infractions, Defendant becomes the police department." Compl. [1] at 2. Defendant does not challenge Plaintiffs' state-action allegation. *See generally* Mem. [11]. The Court will assume for present purposes that Defendant's conduct falls within the tests described above.

As for whether Plaintiffs have sufficiently alleged a deprivation of a protected interest in life, liberty, or property, the Supreme Court has "made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972). Property interests can therefore include "claims of entitlement" to interests in receiving welfare benefits, *id.* at 576 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)), and in tenured employment at a public university, *id.* at 576–77 (citing *Slochower v. Bd. of Higher Ed. of City of New York*, 350 U.S. 551 (1956)). It is also "clear that the Due Process Clause applies to the deprivation of a driver's license by the State" because the "'[s]uspension of issued licenses . . . involves state action that adjudicates important interests of the licensees'" that cannot "'be taken away without that procedural due process required by the Fourteenth Amendment.'" *Dixon v. Love*, 431 U.S. 105, 112 (1977) (quoting *Bell v. Burson*, 402 U.S. 535, 539 (1971)). Here, Plaintiffs plainly allege that they were deprived of interests in money, *see* Compl. [1] at 8–11, and in their driver's licenses, *see id.* at 8–13, and Defendant does not contest that Plaintiffs have sufficiently alleged this element of a due process claim, *see* Mot. [10]; Mem. [11].

2.     <u>Whether Plaintiffs have sufficiently alleged inadequate state process</u>

"While state law determines whether a claimant has a property interest, federal law determines the minimum procedures constitutionally required." *Helton v. Clements*, 832 F.2d 332, 337 (5th Cir. 1987) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). "Procedural due process is a flexible concept whose contours are shaped by the nature of the individual's and the state interests in a particular deprivation." *Caine v. Hardy*, 943 F.2d 1406, 1411–12 (5th Cir. 1991).

Generally, the "government may effect a deprivation only *after* it has accorded due process, but the necessary amount and kind of pre-deprivation process depends upon an analysis of three factors": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 1412 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also Campos v. Donna Indep. Sch. Dist.*, No. 7:15-CV-70, 2016 WL 8117635, at *3 (S.D. Tex. Apr. 4, 2016) (reciting the *Mathews* test).

When the government must provide notice of a proceeding that will extinguish a party's property rights, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise

19

interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  The government must provide notice in a manner that reflects that it was "desirous of actually informing the absentee" of the proceeding against it, *Mullane*, 339 U.S. at 315, and "assessing the adequacy of a particular form of notice requires balancing the 'interest of the State' against 'the individual interest sought to be protected by the Fourteenth Amendment,'" *Jones*, 547 U.S. at 229 (quoting *Mullane*, 339 U.S. at 314).

But "[d]ue process does not require that a property owner receive actual notice before the government may take his property."  *Id.*  The Supreme Court has found notice constitutionally sufficient in cases when "the government attempted to provide notice and heard nothing back indicating that anything had gone awry" because "'[t]he reasonableness and hence the constitutional validity of [the] chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.'"  *Id.* (quoting *Mullane*, 339 U.S. at 313) (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (alterations in original)).  And "the failure of notice in a specific case does not establish the inadequacy of the attempted notice; in that sense, the constitutionality of a particular procedure for notice is assessed *ex ante*, rather than *post hoc*."  *Id.* at 231.

Still, "regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case," notice is inadequate when the government

merely follows a statutory scheme despite knowing that the scheme would not provide meaningful notice to the intended recipient. *Id.* at 230. The Supreme Court has, accordingly, held that "notice of forfeiture proceedings sent to a vehicle owner's home address was inadequate when the State knew that the property owner was in prison," *id.* (citing *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972)), and "that notice of foreclosure by mailing, posting, and publication was inadequate when town officials knew that the property owner was incompetent and without a guardian's protection," *id.* (citing *Covey v. Town of Somers*, 351 U.S. 141, 146–47 (1956)). In *Jones*, the Court concluded that sending notice of an impending tax sale by certified mail was insufficient given the state became aware that the notice was returned as unclaimed, and the Court did "not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed." *Id.* at 229.

Importantly, "[a]lthough a state or local entity may have failed to comply with statutory notice requirements, 'this state law violation does not also amount to a violation of federal due process.'" *Lee v. City of Pascagoula, Jackson Cnty., Mississippi*, No. 1:23CV63-LG-RPM, 2023 WL 8654932, at *5 (S.D. Miss. Dec. 14, 2023) (quoting *Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 584 (5th Cir. 2016)). "[U]nless the conduct trespasses on federal constitutional safeguards, there is no [federal] constitutional deprivation." *Id.* (quoting *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985)) (alterations in original). Therefore, "[t]o prove that state-mandated procedures add to the federal constitutional minimum,"

such that a violation of the state procedure amounts to a violation of the Fourteenth Amendment to the United States Constitution, "a plaintiff must show that 'the procedures promised [were] denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected.'" *Id.* (quoting *Levitt*, 759 F.2d at 1230). "[T]he due process clause does not require a state to implement its own law correctly, and accordingly a violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment." *Id.* at *6 (alteration removed) (citing *G & H Dev., L.L.C. v. Benton-Par. Metro. Plan. Comm'n*, 641 F. App'x 354, 358 (5th Cir. 2016) (quoting *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996))).

Defendant argues that Plaintiffs' allegations in their Complaint [1] admit that they all received notices and opportunities to be heard, such that due process was therefore satisfied. Mem. [11] at 7–11. Defendant points out that each Plaintiff not only received notice before any punishment befell them, but that each exercised one of the options contained in the notice, such as to enter the diversion program. *See id.* at 10. Defendant also argues that Plaintiffs' claims that Defendant's diversion program violates Mississippi law could possibly constitute defenses to state-court proceedings against them under Mississippi Code Annotated § 63-15-4, but that is not sufficient by itself to establish a violation of the United States Constitution. *See id.* at 11.

The Court concurs with Defendant on the merits of Plaintiffs' procedural due process claims. Under the foregoing authority, the Court finds the notice provided

to each Plaintiff was reasonably calculated under the circumstances to apprise each of them of their alleged violation of Mississippi law, the failure to maintain insurance, and of the potential pendency of a proceeding against them.  *See* Ex. [1-1], Ex. [1-2], Ex. [1-3].  Each Plaintiff was afforded an opportunity to choose among three options to respond to the alleged violations, one of which included appearing in court to contest them.  *See id.*  And each Plaintiff made their own decision about how to respond.  Plaintiff Divine chose to pay $100 of the total $300 Diversion Program fee, Mr. Merchant paid the entire $300 fee, and Mr. Jones did not pay any amount toward the fee.  Even so, none of them have had their driver's license suspended or revoked.  Resp. [16] at 2.  In fact, "no state court proceeding has been brought against any Plaintiff."  *Id.*

As to the sufficiency of the notice provided, two Plaintiffs received their notices by mail with adequate time to respond.  Mr. Merchant received his notice approximately one month before his scheduled court date, and Mr. Jones received his notice approximately one week before.  *See* Compl. [1] at 11-13.  The Court recognizes that Ms. Divine received her mail notice the same day as her court date, giving her little or no time to respond.  *See* Compl. [1] at 9-10.  But Defendant had no control over the speed at which mail was delivered, was not in a position to know when Ms. Divine's notice arrived, and ultimately, was entitled to assume the notice was delivered timely by the Postal Service.  And in any event, because "the failure of notice in a specific case does not establish the inadequacy of the attempted notice[,]" and because "the constitutionality of a particular procedure for notice is

assessed *ex ante*, rather than *post hoc*[,]" Ms. Divine's individual experience is insufficient, standing alone, to establish a due process violation. *Jones v. Flowers*, 547 U.S. 220, 231 (2006).

Plaintiffs also claim that the court dates listed in the mail notices were never "filed with a court, so there is no actual court date." *See* Compl. at 6. But this undercuts Plaintiffs' insufficient-notice argument. Assuming the court dates provided in fact had not been set, this means that Plaintiffs actually had more time to prepare for their eventual hearings in court than they originally believed. This is insufficient to establish a due process violation, and the Court finds that Defendant's Motion [10] should be granted as to each Plaintiff's federal due process claim.

D.     Whether to dismiss Plaintiffs' Complaint [1] for lack of subject-matter jurisdiction

As discussed *supra*, when a court's subject-matter jurisdiction over state-law claims is premised on pendent jurisdiction, it has discretion to dismiss state-law claims after dismissing the claim over which it had original federal jurisdiction. *See* § 1367(c). But if there is no claim that establishes federal jurisdiction, a court must dismiss pendent state-law claims as well because "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514; *see* 5B Charles Allen Wright et al., *Federal Practice and Procedure*, *Motions to Dismiss—Lack of Jurisdiction Over the Subject Matter* § 1350 (4th ed. June 2024 update) ("Under these circumstances, the district court would be unable to exercise supplemental jurisdiction over the related state

law claims under Section 1367 of Title 28, due to the absence of any claim over which the court could have exercised original jurisdiction.").

But here, Plaintiffs have also pled that the Court has original jurisdiction under CAFA. Because Defendant has not addressed this issue or the merits of Plaintiffs' state-law claims, the remainder of the Motion to Dismiss will be denied without prejudice, with leave to reassert.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Securix, LLC's Motion [10] to Dismiss is **GRANTED IN PART**, in that Plaintiffs Amy Divine, Karl Merchant, and Columbus Jones's 42 U.S.C. § 1983 federal due process claims under the Fourteenth Amendment will be **DISMISSED WITH PREJUDICE**, and otherwise **DENIED IN PART WITHOUT PREJUDICE** until such time as Defendant addresses the Court's subject-matter jurisdiction under the Class Action Fairness Act.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Amy Divine, Karl Merchant, and Columbus Jones's 42 U.S.C. § 1983 federal due process claims under the Fourteenth Amendment are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this the 19th day of September, 2024.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE