**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**AMY DIVINE, KARL MERCHANT, and**                                    **PLAINTIFFS**
**COLUMBUS JONES, on behalf of themselves**
**and all others similarly situated**

**v.**                                                    **CIVIL ACTION NO.: 1:23cv196 HSO-BWR**

**SECURIX, LLC**                                                            **DEFENDANT**

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### FACTS

Pretending to be law enforcement, Defendant has made millions of dollars collecting fees from individuals who allegedly violated state uninsured vehicle laws. Specifically, Defendant contracts with government entities ("City" or "Cities") to implement Defendant's system ("Diversion Program") for detecting, ticketing, and collecting fees from vehicle owners that Defendant believes are uninsured. Defendant tickets the registered owner of the vehicle without regard to who was driving and with no analysis of whether the driver was lawfully insured.

Defendant goes to great lengths to make it appear that the City operates the Diversion Program. Defendant's form ticket or citation bears the name of the City and does not mention Defendant's name. The ticket contains what appears to be a police officer's sworn affidavit and states that a court date has been set (though no case has actually been docketed).

The ticket provides a telephone number and website that a vehicle owner can use to pay the fee. But, Defendant, not the City, creates and maintains the number and the website. Defendant receives all fee payments and then remits a portion to the City.

Acting under color of law, Defendant handles everything from detection of the alleged violation to collection of the fee. Put simply, for alleged uninsured vehicle infractions, Defendant becomes the police department.

1

Defendant has contracted with Cities in several states to implement the Diversion Program. Indeed, on one of its websites, Defendant states, "SECURIX has established and operates Public Safety Companies in most states around the nation, (see newyorkpublicsafety.com, missouripublicsafety.com, etc.)."[1]

To identify alleged uninsured vehicles, Defendant relies solely on automated license plate readers ("ALPRs"), which can be mounted on police cars, road signs, or traffic lights. ALPRs capture computer-readable images of license plates that allow Defendant to compare the plate numbers against various databases to determine whether a particular vehicle is insured or not. If Defendant believes a vehicle is uninsured, Defendant mails a document to the vehicle owner that purports to be a legitimate traffic ticket.[2]

The Diversion Program is unlawful for many reasons. In Mississippi, Cities may not use ALPRs to enforce "traffic laws." Miss. Code Ann. § 17-26-19(1)(a).[3] The statute defines ALPRs as "a camera or optical device installed to work in conjunction with a traffic control signal or radar speed detection equipment or both and designed to record images that depict the license plate attached to the rear of a motor vehicle that is not operated in compliance with instructions of the traffic control signal or the posted speed limit." Miss. Code Ann. § 17-26-19(2).

ALPRs identify the registered owner of the vehicle only and not the driver. This fact is crucial in determining the existence of probable cause and, ultimately, liability. Many states, like

---

[1] https://www.securixsystems.com/ (last visited on June 3, 2025).

[2] Solely for brevity's sake, Plaintiffs refer to the document as "Ticket." Plaintiffs dispute that the document is a legitimate citation.

[3] In this brief, Plaintiffs discuss only Mississippi law because, to date, Defendant has refused to answer Plaintiffs' class-related written discovery, which seeks, in part, to ascertain each state in which Defendant operates its Diversion Program.

Mississippi, have enacted uninsured vehicle statutes that do not specify whether a vehicle owner, operator, or some other party must maintain the necessary insurance.

Mississippi's statute states, "Every motor vehicle operated in this state shall have a motor vehicle liability insurance policy that covers the vehicle and is in compliance with the liability limits required by Section 63-15-3(j). The insured parties shall be responsible for maintaining the insurance on each motor vehicle." Miss. Code Ann. 63-15-4(2).

The statute merely requires that the vehicle be insured and does not turn on whether a driver as opposed to an owner insures the vehicle. The Mississippi Attorney General has affirmed this aspect of the statute:

> It is the opinion of this office that a violation of Section 63-15-4 occurs only when both the owner and operator fail to have proof of insurance. Therefore, if the operator has proof of insurance which covers his operation of the vehicle but the owner does not, there is no violation. Likewise, if the owner of the motor vehicle has proof of insurance in the vehicle but the operator does not, there is still no violation.

Op. Att'y Gen. No. 2015-00309, 2015 WL 6121922 (Sept. 4, 2015) (quoting Op. Miss. Att'y Gen., No. 2001-0052, 2001 WL 283638 (Feb. 9, 2001)).

By relying solely on information obtained from vehicle owner records, Defendant lacked probable cause to send the Tickets to vehicle owners. Law enforcement officers may issue a citation for violation of the vehicle insurance statute only in connection with a roadblock used to enforce traffic laws or upon stopping a vehicle for some other statutory violation. *See* Miss. Code Ann. § 63-15-4(3) ("However, no driver shall be stopped or detained solely for the purpose of verifying that the motor vehicle is covered by liability insurance in the amounts required under Section 63-15-3(j) unless the stop is part of such roadblock.") and Miss. Code Ann. § 63-16-5(3) ("Except upon reasonable cause to believe that a driver has violated another traffic regulation or that the driver's motor vehicle is unsafe or not equipped as required by law, a law enforcement

3

officer may not use the [insurance] verification system to stop a driver for operating a motor vehicle in violation of this chapter.").

In blatant violation of these statutes, Defendant does not issue Tickets in conjunction with a lawful stop. In fact, there is no stop at all. Defendant merely takes pictures of license plates, unlawfully runs the information through the State's verification system, and sends out Tickets.

The Diversion Program is egregiously misleading and deceptive. The Ticket that Defendant mails to the vehicle owner has all the trappings of a legitimate ticket. It represents that it was issued by the City's police department, and it does not mention Defendant's name. The Ticket contains what appears to be a sworn affidavit from a police officer stating that the owner has violated the state's uninsured vehicle law. It states the date and time of the alleged infraction.

The Ticket even provides a court date though the Ticket is not filed with a court, so there is no actual court date. The Ticket threatens suspension of the owner's driver's license unless the owner does one of three things:

a.    Provide proof of insurance at the time of the violation;

b.    Enter the Diversion Program by paying a fee; or

c.    Appear in court.

The owner can provide proof of insurance over the telephone or by visiting a website. Defendant, not the City, maintains the telephone number and website. Thus, a vehicle owner calling the telephone number will not reach the City, the police department, or a court, but Defendant's "help desk."

Defendant's Diversion Program is a profitable scheme for Defendant. For example, Defendant implemented the Diversion Program for the City of Ocean Springs, Mississippi. Speaking highly of the program, Police Chief Mark Dunston stated, "In the last couple months,

we have identified close to 6,000 violations."[4] Defendant also operates its Diversion Program for the City of Senatobia, Mississippi.

I.    **Plaintiff Divine's Experience with Defendant.**

On or about July 1, 2022, Divine received an envelope via U.S. Mail containing two documents: (1) a Ticket titled, "FINAL NOTICE – PRIOR TO COURT APPEARANCE," which purports to be a ticket from the Ocean Springs Police Department ("OSPD") and (2) an April 6, 2022 letter bearing Police Chief Mark Dunston's signature. The Ticket states that it is a Uniform Traffic Ticket. But the Ticket does not, in fact or in law, comply with Mississippi's Uniform Traffic Ticket statute, Miss Code Ann. 63-9- 21.

The Ticket contains what appears to be a sworn affidavit from Officer Michael Ducote of the OSPD. Officer Ducote swears that, on March 30, 2022, Divine violated Miss. Code Ann. § 63-15-4 by operating an uninsured vehicle on a public roadway.

The Ticket contains an image of Divine's license plate that is, per the affidavit, "evidence of the violation that I have personally confirmed as a duly sworn officer and based on my inspection of recorded images and government information I have determined probable cause that the vehicle was in violation."

Officer Ducote does not aver that, at the time of the alleged violation, he executed a traffic stop and determined the vehicle was uninsured. Officer Ducote does not aver that, at the time of the alleged violation, any other police officer stopped Divine and determined that the vehicle was uninsured. Officer Ducote does not state a time or date when he allegedly "confirmed" that the license plate image was evidence of the violation.

---

[4] https://www.insurancejournal.com/news/southeast/2022/03/21/659043.htm (last visited on June 3, 2025).

Officer Ducote does not state a time or date when he determined that the image established probable cause of a violation. Officer Ducote does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the Ticket to Divine as required by Miss. Code Ann. § 63-9-21(6).

Put simply, the affidavit merely alleges that, at some unspecified time after the image was taken, Officer Ducote reviewed it, compared it with "government information," and determined (1) probable cause and (2) Divine violated the uninsured vehicle statute. The Ticket threatens the suspension of Divine's driver's license unless she does one of three things: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300 fee by July 1, 2022 (the same day Divine received the Ticket); (3) or appear in court.

The Ticket provides a telephone number and a website to either provide proof of insurance or enter the Diversion Program and pay the fee. Defendant, not the City, created and maintains the telephone number and website (www.courtstatus.com). The Ticket provides a July 1, 2022 court date, but no case was ever docketed with the court. In other words, the Ticket "summons" Divine to a court date that does not exist.

Divine paid $100 of the $300 fee for the Diversion Program. In addition to her monetary damages, she faces the possibility of further harm from Defendant's unlawful conduct, *e.g.*, suspension of her license, collection efforts, etc.

## II.    Plaintiff Merchant's Experience with Defendant.

In early August 2022, Merchant received an envelope via U.S. Mail containing a Ticket titled, "STATE OF MISSISSIPPI – UNIFORM TRAFFIC TICKET," which purports to be a ticket from the OSPD. The Ticket states that it is a Uniform Traffic Ticket. But the Ticket does not, in fact or in law, comply with Mississippi's Uniform Traffic Ticket statute, Miss. Code Ann. § 63-9-21. The Ticket contains what appears to be a sworn affidavit from Officer Beasley of the

6

OSPD. Officer Beasley swears that, on June 12, 2022, Merchant violated Miss. Code Ann. § 63-15-4 by operating an uninsured vehicle on a public roadway.

The Ticket contains an image of Merchant's license plate that is, per the affidavit, "evidence of the violation that I have personally confirmed. Based on my inspection of recorded images and government information I have determined probable cause that the vehicle was in violation." Officer Beasley does not aver that, at the time of the alleged violation, he executed a traffic stop and determined that the vehicle was uninsured. Officer Beasley does not aver that, at the time of the alleged violation, any other police officer stopped Merchant and determined the vehicle was uninsured. Officer Beasley does not state a time or date when he allegedly "confirmed" that the license plate image was evidence of the violation. Officer Beasley does not state a time or date when he determined that the image established probable cause of a violation.

Officer Beasley does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the Ticket to Merchant as required by Miss. Code Ann. § 63-9-21(6). Put simply, the affidavit merely alleges that, at some unspecified time after the image was taken, Officer Beasley reviewed it, compared it with "government information," and determined that (1) probable cause existed and (2) Merchant violated the uninsured vehicle statute.

The Ticket threatens the suspension of Merchant's driver's license unless he does one of three things: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300 fee by September 2, 2022; (3) or appear in court. The Ticket provides a telephone number and a website to either provide proof of insurance or enter the Diversion Program and pay the fee. Defendant, not the City, created and maintains the telephone number and website (www.courtstatus.com). The Ticket provides a September 2, 2022 court date, but no

case was ever docketed with the court. In other words, the Ticket "summons" Merchant to a court date that does not exist. Merchant paid the $300 fee for the Diversion Program.

**III.    Plaintiff Jones' Experience with Defendant.**

In early May 2023, Jones received an envelope via U.S. Mail containing a Ticket titled, "STATE OF MISSISSIPPI – UNIFORM TRAFFIC TICKET," which purports to be a ticket from the City of Senatobia, Mississippi Police Department ("SPD"). The Ticket states that it is a Uniform Traffic Ticket. But the Ticket does not, in fact or in law, comply with Mississippi's Uniform Traffic Ticket statute, Miss. Code Ann. § 63-9-21. The Ticket contains what appears to be a sworn affidavit from Officer Chandler of the SPD. Officer Chandler swears that, on January 2, 2023, Jones violated Miss. Code Ann. § 63-15-4 by operating an uninsured vehicle on a public roadway.

The Ticket contains an image of Jones' license plate that is, per the affidavit, "evidence of the violation that I have personally confirmed as a duly sworn officer and based on my inspection of recorded images and government information I have determined probable cause that the vehicle was in violation." Officer Chandler does not aver that, at the time of the alleged violation, he executed a traffic stop and determined that the vehicle was uninsured. Officer Chandler does not aver that, at the time of the alleged violation, any other police officer stopped Jones and determined that the vehicle was uninsured. Officer Chandler does not state a time or date when he allegedly "confirmed" that the license plate image was evidence of the violation.

Officer Chandler does not state a time or date when he determined that the image established probable cause of a violation. Officer Chandler does not confirm that he personally observed the alleged violation occur in his physical presence or that he personally handed the Ticket to Jones as required by Miss. Code Ann. § 63-9-21(6).

Put simply, the affidavit merely alleges that, at some unspecified time after the image was

8

taken, Officer Chandler reviewed it, compared it with "government information," and determined that (1) probable cause existed and (2) Jones violated the uninsured vehicle statute.

The Ticket threatens the suspension of Jones' driver's license unless he does one of three things: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300 fee by May 9, 2023; (3) or appear in court. The Ticket provides a telephone number and a website to either provide proof of insurance or enter the Diversion Program and pay the fee. Defendant, not the City, created and maintains the telephone number and website (www.courtstatus.com). The Ticket provides a May 9, 2023 court date, but no case was ever docketed with the court. In other words, the Ticket "summons" Jones to a court date that does not exist. Jones has not paid money toward the Diversion Program, but he faces the possibility of harm from Defendant's unlawful conduct, *e.g.*, suspension of his license, collection efforts, etc.

## RELEVANT PROCEDURAL BACKGROUND

On November 14, 2024, Plaintiffs served class-related interrogatories [23], document requests [24], and requests for admission [25]. Despite receiving multiple extensions of time to respond to Plaintiffs' class-related written discovery, Defendant failed to do so. To date, Defendant has not responded.

On December 15, 2025, Defendant's counsel moved to withdraw. [38]. On January 23, 2025, Magistrate Judge Rath denied without prejudice the motion to withdraw and stated, "SECURIX, LLC is warned that it must have substitute counsel enter an appearance on its behalf on or before February 25, 2025." Order [41] at 2. Defendant did not the deadline to have substitute counsel enter an appearance. On February 26, Defendant's counsel filed a renewed motion to withdraw. [43]. On March 20, 2025, Magistrate Judge Rath granted the withdrawal motion and ordered Defendant to have substitute counsel enter an appearance on its behalf by

March 25, 2025, and to answer Plaintiffs' class-related discovery by April 1, 2025. Order [49] at

5. Defendant missed both deadlines.

## ARGUMENT

### I.    STANDARD

"The decision to certify is within the broad discretion of the court, but that discretion

must be exercised within the framework of [R]ule 23." *Madison v. Chalmette Ref., L.L.C.*, 637

F.3d 551, 554 (5th Cir. 2011) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.

1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693

(1981)).

The party seeking to certify a class bears the burden of showing that the case meets the

requirements of Federal Rule of Civil Procedure 23. *Beech v. Litig. Prac. Grp., PC*, No.

1:22cv57-HSO-BWR, 2024 U.S. Dist. LEXIS 9131, at *7 (S.D. Miss. Jan. 18, 2024) (citations

omitted). Even if unopposed, the court must evaluate a motion for class certification on its

merits. *Beech*, No. 1:22cv57-HSO-BWR, 2024 U.S. Dist. LEXIS 9131, at *7 (quoting *Crowley*

*v. Paint & Body Experts of Slidell, Inc.*, No. CIV.A. 14-172, 2014 U.S. Dist. LEXIS 75472, 2014

WL 2506519, at *4 (E.D. La. June 3, 2014)).

### II.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(a).

#### A.    The Proposed Class Satisfies The Numerosity Requirement.

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous

that joinder of all members is impracticable." "To satisfy the numerosity prong, 'a plaintiff must

ordinarily demonstrate some evidence or reasonable estimate of the number of purported class

members.'" *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v.*

*J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). Courts have certified

classes with "as few as twenty-five or thirty members." *Zeidman*, 651 F. 2d at 1038 (citing C.

10

Wright & A. Miller, Federal Practice & Procedure § 1762, at 597-99 (1972)). The actual number is not determinative because "[t]he proper focus (under Rule 23(a)(1)) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Id.* (quoting *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981) (citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), cert. denied, 449 U.S. 1113, 101 S. Ct. 923, 66 L. Ed. 2d 842 (1981). "Thus, a number of facts other than the actual or estimated number of purported class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.* (Citation omitted.)

Here, on behalf of the city of Ocean Springs, Mississippi alone, Defendant sent out approximately 6000 Tickets in only a couple of months.[5] Compl. [1] at ¶ 45. Further, Defendant claims to operate its Diversion Program in numerous other states.[6] Given the sheer number of class members and their geographic dispersion, the proposed class satisfies the numerosity requirement.

### B.    The Proposed Class Meets The Commonality Requirement.

Rule 23(a)(2) requires "questions of law or fact common to the class." As the Supreme Court has explained:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. . . . Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a

---

[5] https://www.insurancejournal.com/news/southeast/2022/03/21/659043.htm (last visited on June 3, 2025).

[6] https://www.securixsystems.com/ (last visited on June 3, 2025).

> nature that it is capable of classwide resolution—which means that determination
> of its truth or falsity will resolve an issue that is central to the validity of each one
> of the claims in one stroke.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 131 S. Ct. 2541, 2556, 180 L. Ed. 2d 374

(2011). "The commonality requirement is met if plaintiffs' grievances share a common question

of law or of fact." *Cent. States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco*

*Managed Care, L.L.C.*, 504 F.3d 229, 245 (2nd Cir. 2007) "Commonality does not mean that all

issues must be identical as to each member, but it does require that plaintiffs identify some

unifying thread among the members' claims that warrants class treatment." *Damassia v. Duane*

*Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (quotation marks and alterations omitted).

Plaintiffs and class members have suffered the same injury in that Defendant unlawfully

mailed Tickets to Plaintiffs and class members claiming that they owed money for allegedly

operating a vehicle without insurance. Defendant mailed the Tickets without probable cause.

Further, the Tickets were not issued in connection with a lawful stop. Though the Tickets are

unlawful, Defendant has threatened to suspend Plaintiffs' and class members' driver's licenses if

they do not pay Defendant's fee. In short, none of the relevant questions of law or fact relate to

the conduct of Plaintiffs or class members, but rather all focus on Defendant's conduct and

culpability.

### C.    The Proposed Class Meets The Typicality Requirement.

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims

... of the class." As the Fifth Circuit Court of Appeals stated:

> [T]he test for typicality is not demanding. It focuses on the similarity between the
> named plaintiffs' legal and remedial theories and the theories of those whom they
> purport to represent. Typicality does not require a complete identity of
> claims. Rather, the critical inquiry is whether the class representative's claims
> have the same essential characteristics of those of the putative class. If the claims
> arise from a similar course of conduct and share the same legal theory, factual
> differences will not defeat typicality.

12

*Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). In the present case, Plaintiffs' and the class members' claims arise from Defendant's identical course of conduct as described in detail, *supra*. Stated differently, this lawsuit is based on conduct that is not unique to Plaintiffs, but on uniform conduct that is common to all class members. Moreover, Plaintiffs seek the same relief, specifically, injunctive relief and monies paid toward the Diversion Program, for all class members.

      **D.    The Proposed Class Meets The Adequacy of Representation Requirement.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Stirman*, 280 F.3d at 563 (5th Cir. 2002) (quoting *Berger v. Compaq Computer Corp.*, 257 F. 3d 475, 479 (5th Cir. 2001)). Specifically, courts consider "[1] the zeal and competence of the representative['s'] counsel and … [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger*, 257 F. 3d at 479.

Here, Plaintiffs have hired counsel experienced in litigating consumer class actions (Herrington Decl. [51-2]) and they have actively prosecuted their case. There are no conflicts of interest between Plaintiffs and class members. Indeed, Plaintiffs and each class member assert identical claims for injunctive relief and damages arising from the same facts. There are no unique, or individualized, defenses to Plaintiffs' and class members' claims.

**III.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(2).**

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole." Defendant's Diversion Program inflicts injury on Plaintiffs and class members in the same manner and based on the same grounds. Absent injunctive relief, Plaintiffs and class members face the possibility of having their driver's license suspended though the Diversion Program is unlawful. The class should be certified pursuant to Rule 23(b)(2).

## IV.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(3).

Rule 23(b)(3) authorizes certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### A.    Common Questions Predominate

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-1023 (9th Cir. 1998). Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). Defendant's Diversion Program, which operates uniformly with respect to each class member, is at the center of this case. The question of its unlawfulness rises and falls on common issues rather than individual ones. There simply are no individual issues that predominate over common ones.

### B.    Maintaining This Case As A Class Action Is Superior To Individual Lawsuits.

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other

realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

Here, a class member paid into the Diversion Program, at most, $300. As in *Culinary/Bartender Trust Fund*, "[t]his case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Id*. at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009) ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the Fair Credit Reporting Act, the Seventh Circuit stated, "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held. *See Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs totaled $1,006.00. Such plaintiffs would be unlikely to obtain legal redress…. This, of

course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the class members in this case.

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for class certification.

DATED: June 3, 2025.

PLAINTIFFS,

 *s/ Brian K. Herrington*
Brian K. Herrington, MB# 10204
Rogen K. Chhabra, MB# 99131
CHHABRA GIBBS & HERRINGTON PLLC
120 N. Congress St., Ste. 200
Jackson, MS 39201
T: 601-326-0820
F: 601-948-8010
bherrington@nationalclasslawyers.com
rchhabra@nationalclasslawyers.com

John G. (Trae) Sims, III, MB# 99679
SIMS LAW FIRM, PLLC
P.O. Box 54
Madison, MS 39130
745 HWY 51 - Suite D
Madison, MS 39110
T: 601-207-3732
trae@thesimslawfirm.com

Attorneys for Plaintiffs and the Putative Class

**CERTIFICATE OF SERVICE**

I, Brian K. Herrington, do certify that, on June 3, 2025, I served a copy of the foregoing

document on the following via email only:

Jonathan Miller
jm@securixsystems.com.

*s/ Brian K. Herrington*
Brian K. Herrington