IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

AMY DIVINE, KARL MERCHANT,                                   PLAINTIFFS
and COLUMBUS JONES, *on behalf*
*of themselves and all others*
*similarly situated*


v.                                          Civil No. 1:23-cv-196-HSO-BWR


SECURIX, LLC                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS AMY
DIVINE, KARL MERCHANT, AND COLUMBUS JONES' MOTION [51] FOR
CLASS CERTIFICATION, AND DIRECTING PLAINTIFFS TO SHOW
CAUSE HOW THIS COURT RETAINS ORIGINAL SUBJECT-MATTER
JURISDICTION**

Three Named Plaintiffs brought this action against Defendant Securix, LLC,

alleging that its electronic license plate monitoring program, which seeks to ensure

compliance with Mississippi's uninsured motorist laws, violates state law. *See*

Compl. [1] at 5-8. Plaintiffs now seek to certify a nationwide class of plaintiffs who

were cited by Defendant's program in Mississippi and other states. *See* Mot. [51];

Mem. [52]. Plaintiffs' Motion [51] should be denied because they have failed to

carry their burden under Federal Rule of Civil Procedure 23(a) and (b). In light of

this, Plaintiffs will also be directed to demonstrate how the Court retains original

subject-matter jurisdiction over this matter.

## I. BACKGROUND

Plaintiffs challenge the legality of Defendant Securix, LLC's ("Defendant")

electronic license plate monitoring program, or "Diversion Program," that it

operates in Mississippi and other states.  Mem. [52] at 1.  Mississippi requires

drivers to carry liability insurance, *see* Miss. Code Ann. § 63-15-4(2)(a), and the

> [f]ailure of the owner or the operator of a motor vehicle [to prove they
> have the required insurance coverage] is a misdemeanor and, upon
> conviction, is punishable by a fine of One Hundred Dollars ($100.00) and
> suspension of driving privilege for a period of one (1) year or until the
> owner of the motor vehicle shows proof of liability insurance . . . and has
> paid the fines and assessments imposed and the driver's license
> reinstatement fees imposed by the Department of Public Safety.

Miss. Code Ann. § 63-15-4(4).  Mississippi law also requires "[t]he department of

Public Safety, . . . in cooperation with the Commissioner of Insurance and the

Department of Revenue, [to] establish an accessible common carrier-based motor

vehicle insurance verification system to verify the compliance of a motor vehicle

with" Mississippi Code § 63-15-4.  Miss. Code Ann. § 63-16-3(1).

To enforce compliance with these statutes, some cities in Mississippi have

contracted with private companies, like Defendant.  According to Plaintiffs,

Defendant contracted with the City of Ocean Springs, Mississippi, and the City of

Senatobia, Mississippi, to act on its behalf in enforcing Mississippi's insurance

coverage requirement through electronic monitoring.  Mem. [52] at 1.  To do this,

Defendant utilizes automated license plate readers ("ALPRs"), which "capture

computer-readable images of license plates that allow Defendant to compare the

plate numbers against various databases to determine whether a particular vehicle

is uninsured."  *Id.* at 2.  Once Defendant's system identifies an uninsured vehicle,

notice is mailed to the vehicle owner with three options: (1) "Provide proof of

insurance at the time of the violation"; (2) "Enter the Diversion Program by paying

a fee"; or (3) "Appear in Court."  Compl. [1] at 6-7; Mem. [52] at 4.

2

Plaintiffs take issue with Defendant's use of electronic enforcement and argue that these are not legitimate citations because they were issued in violation of state law.  Mem. [52] at 2 n.2.  First, Plaintiffs argue that Defendant relies solely on ALPRs to issue the citations, which violates Mississippi Code § 17-26-19(1)(a).  *Id.* at 2.  Second, they assert that while a notice will contain an affidavit from a police officer swearing that he used the state's insurance verification system to conclude that probable cause existed that the vehicle owner violated Mississippi Code § 63-15-4, probable cause could not have existed based only upon checking whether the owner of a vehicle had properly insured the vehicle.  Compl. [1] at 5.  This is because "ALPRs identify the registered owner of the vehicle only and not the driver," *id.* at 7, but the "statute merely requires that the vehicle be insured and does not turn on whether a driver as opposed to an owner insures the vehicle," Mem. [52] at 3.  Therefore, "[b]y relying solely on information obtained from vehicle owner records, Defendant lacked probable cause to send the Tickets to vehicle owners."  *Id.*  Third, Plaintiffs say that the citations are invalid because they were not issued in conjunction with a lawful stop, Compl. [1] at 6; Mem. [52] at 3, and according to Plaintiffs, "[l]aw enforcement officers may issue a citation for violation of the vehicle insurance statute only in connection with a roadblock used to enforce traffic laws or upon stopping a vehicle for some other statutory violations," Mem. [52] at 3 (citing Miss. Code Ann. §§ 63-15-4(3), 63-16-5(3)).

Plaintiffs Amy Divine ("Divine"), Karl Merchant ("Merchant"), and Columbus Jones ("Jones"), each claim to be victims of Defendant's electronic enforcement

system. Each received a citation from the Ocean Spring Police Department or the City of Senatobia Police Department. Mem. [52] at 6-8. Each citation contained an affidavit by a police officer swearing he inspected the image and that he used the state's insurance verification system to conclude that probable cause existed that the vehicle owner violated Mississippi Code § 63-15-4, but no officer states that they personally observed the alleged violation or when they reviewed the camera footage. *Id.* Each Plaintiff had the same three options to respond to the citation: (1) provide proof of insurance at the time of the violation; (2) enter the Diversion Program and pay a $300.00 fine; or (3) appear in court. *Id.* at 6-9. Plaintiff Divine paid $100.00 of the $300.00 fine issued to her and claims that "she faces the possibility of further harm from Defendant's unlawful conduct, [like] suspension of her license, [or] collection efforts." *Id.* at 6. Her full payment was due on September 2, 2022. *Id.* at 7. Plaintiff Merchant paid the entire $300.00 fine. *Id.* at 6-7. Plaintiff Jones has not paid any amount of the $300.00 fine and claims that he "faces possibility of harm from Defendant's unlawful conduct, [like] suspension of his license, [or] collection efforts." *Id.* at 9. His full payment was due on May 9, 2023. *Id.*

Proceeding under 42 U.S.C. § 1983 and the Class Action Fairness Act of 2005, ("CAFA"),[1] Plaintiffs brought this suit in August 2023, raising federal procedural due process claims under 42 U.S.C. § 1983 and state-law claims for unjust-enrichment and abuse of process. *See* Compl. [1] at 16-18. The Court dismissed Plaintiffs' federal due process claims for failure to state a claim on September 19,

---

[1] Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in various sections of 28 U.S.C.).

2024, leaving only their state-law claims for adjudication.  *See* Mem. Op. & Ord. [20].  Plaintiffs now seek to certify the following class: "[a]ll United States residents to whom Defendant sent Tickets alleging a violation of a state's uninsured vehicle statute."  Compl. [1] at 13; *see also* Mot. [51] at 1.  Plaintiffs claim they satisfy the four requirements for certifying a class under Federal Rule of Civil Procedure 23(a) and the additional requirements imposed by Rule 23(b).  Though Defendant has not responded to Plaintiffs' Motion [51], the Court must still evaluate on the merits whether Plaintiffs have made the required showing to justify certifying a class.  *See Beech v. Litig. Prac. Grp., PC*, No. 1:22-CV-57-HSO-BWR, 2024 WL 200937, at *2 (S.D. Miss. Jan. 18, 2024) (gathering cases).

## II. <u>DISCUSSION</u>

A.  <u>Legal Standard</u>

"To obtain class certification, parties must satisfy Federal Rule of Civil Procedure 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)."  *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020) (cleaned up) (quoting *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 682 (5th Cir. 2015)).  "[T]he party seeking certification . . . bears the burden of establishing that the requirements of Rule 23 have been met."  *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554-55 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)).  Under Rule 23(a), class certification requires

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Madison*, 637 F.3d at 554. The trial court must conduct a "rigorous analysis" of these factors. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (citation omitted).

In addition to Rule 23(a), Plaintiff must meet the requirements of at least one subpart of Rule 23(b). *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). Rule 23(b) provides that a class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual members would create a risk of:
> > (A): inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy[.]

Fed. R. Civ. P. 23(b).

B.    Analysis

1.    Rule 23(a) Requirements

a.    Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members," but "the number of members in a proposed class is not determinative of whether joinder is impracticable." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (cleaned up). In addition to the size of the class, relevant factors for numerosity include the geographic dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

Plaintiffs' proposed class includes "[a]ll United States residents to whom Defendant sent Tickets alleging a violation of a state's uninsured vehicle statute." Compl. [1] at 13. Plaintiffs assert that numerosity is met because "there are thousands, if not tens of thousands, of individuals in the Class," *id.* at 14, and that in Ocean Springs, Mississippi, alone, Defendant "sent out approximately 6000 Tickets in only a couple of months," Mem. [52] at 11. According to Plaintiffs, Defendant operates in "numerous other states," and given the geographic dispersion of potential plaintiffs, joinder is impracticable. *Id.*

Plaintiffs satisfy the numerosity requirement under Rule 23(a)(1). They have presented evidence of widespread ticketing in Ocean Springs, Mississippi, and of

Defendant's operation in other cities and states.  *See* Mem. [52] at 10 n.5 (citing

https://www.insurancejournal.com/news/southeast.2022/03/21/659043.htm); n.6

(citing https://www.securixsystems.com/).  Joinder would be impractical because the

proposed class likely encompasses thousands of individuals who are geographically

dispersed.  *See Mullen*, 186 F.3d at 624 (noting that the proposed class size of 100 to

150 members "is within the range that generally satisfies the numerosity

requirement"); *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012) (affirming a class

of 125 members).

b.    Commonality

A plaintiff must demonstrate that there are "questions of law or fact common

to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to

demonstrate that the class members have suffered the same injury."  *Dukes*, 564

U.S. at 349-50 (citation and quotation marks omitted).  To satisfy the commonality

requirement, class members must

> raise at least one contention that is central to the validity of each class
> member's claims.  But this contention need not relate specifically to the
> damages component of the class members' claim.  Even an instance of
> injurious conduct, which would usually relate more directly to the
> defendant's liability than the claimant's damages, may constitute 'the
> same injury.' . . .  Accordingly, . . . the legal requirement that class
> members have all 'suffered the same injury' can be satisfied by an
> instance of the defendant's injurious conduct, even when the resulting
> injurious effects—the damages—are diverse.

*In re Deepwater Horizon*, 739 F.3d, 790, 810-11 (5th Cir. 2014).  Simply put, "a

contention regarding the class members' injury is sufficient to satisfy Rule 23, so

long as the party seeking certification can show that this contention is common to

all class members, is central to the validity of their claims, and is capable of classwide resolution." *Id.* at 811 (internal quotation marks omitted).

Plaintiffs assert they satisfy commonality because they "and class members have suffered the same injury in that Defendant unlawfully mailed Tickets to Plaintiffs and class members," and these citations were issued "without probable cause" and not "in connection with a lawful stop." Mem. [52] at 12. In addition to their unjust-enrichment and abuse of process claims, *see* Compl. [1] at 16-18, Plaintiffs maintain that there are at least eight different questions common to proposed class. They propose the following common questions:

    a.    Whether state or applicable law permits Defendant's Diversion Program;

    b.    Whether the Diversion Program violates Plaintiffs' and Class' federal constitutional rights;

    c.    Whether the Diversion Program constitutes a violation of 42 U.S.C. § 1983 by violating the Plaintiffs' and the Class' procedural due process rights;[2]

    d.    Whether Defendant's conduct constitutes abuse of process;

    e.    Whether the Diversion Program unjustly enriched Defendant;

    f.    Whether the Diversion Program offends public policy;

    g.    Whether the Diversion Program is oppressive or unconscionable; and

    h.    Whether Plaintiff and the Class are entitled to actual, punitive, or other damages, costs, attorney fees, and other relief because of Defendant's practices.

*Id.* at 14. Plaintiffs claim that these questions will yield common answers to Defendant's liability. *Id.*; Mem. [52].

But where, as here, a party seeks class certification under Rule 23(b)(3), the commonality requirement merges with Rule 23(b)(3)'s predominance requirement.

---

[2] Proposed common questions (b) and (c) are foreclosed because the Court has already dismissed Plaintiffs' federal claims. *See* Mem. Op. & Ord. [20].

*See Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) ("The district court struck the class allegations for failure to demonstrate commonality. But we look to predominance, as 'Rule 23(a)(2)'s commonality requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions.'") (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)); *see also Cruson*, 954 F.3d at 252 n.11 (stating that while the defendant "contests the commonality finding [of the district court], its arguments on that point are subsumed into its predominance argument"); *Lindsley v. Omni Hotels Mgmt. Corp.*, No. 3:17-CV-2942, 2019 WL 2743892, *13 (N.D. Tex. July 1, 2019) ("Due to the similarities between the two requirements, in class actions that are sought to be maintained under Rule 23(b)(3), courts will often treat the application of Rules 23(a)(2) and 23(b)(2) together.") (citation omitted). Accordingly, the Court will analyze this factor under Rule 23(b)(3), and as it will explain later, individual issues predominate over common questions in this case and defeat commonality because different state laws will govern different plaintiffs' claims. *See infra* II.B.3.

c.    <u>Typicality</u>

Rule 23(a)(3) requires plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport

to represent.'" *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir.

2023) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).

> A complete identity of claims is not required; rather, the critical inquiry is whether the named plaintiff's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Id.* (cleaned up).

Plaintiffs say that their claims are typical of the class because theirs and

"class members' claims arise from Defendant's identical course of conduct," namely

its electronic enforcement and ticketing.  Mem. [52] at 13.  They maintain that their

claims arise from the same "course of conduct" as that of the other putative class

members in that they all had their license plates electronically scanned by

Defendant and had citations mailed to them.  But the remedial and legal theories

advanced by Plaintiffs, such as their claim for unjust enrichment, differ from those

available to other members of the putative class.

In *Stirman*, the Fifth Circuit considered typicality in the multistate class

action context.  280 F.3d 554.  There, the plaintiffs alleged that Exxon Corporation

"breached its lease obligations to them and to a class of similarly situated

individuals by violating an implied covenant to market the natural gas and natural

gas liquids . . . that were the subject of the leases."  *Id.* at 557.  The putative class

certified by the district court included royalty interest owners from fifteen different

states, including Texas.  *Id.* at 557-58.  The plaintiffs claimed that Exxon "engaged

in a similar course of conduct with respect to each of them, i.e. the underpayment of

royalties based on breach of an implied duty to market."  *Id.*  at 562.  The district

court certified the class even though some states, like Texas, did not recognize that Exxon had an implied covenant to market. *Id.* The Fifth Circuit reversed, concluding that the district court erred in finding typicality because "[g]iven the differences among the state laws, it cannot be said that [Plaintiff's] claims are 'typical' of the [multistate] class as it is currently defined." *Id.*; *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054-55 (S.D. Tex. 2012) (quoting same).

Put another way, while minor variations in state law, such as differences in the elements of a claim, do not undermine typicality, *see In re Heartland*, 851 F. Supp. 2d at 1054, significant variations, such as when certain states do not recognize the claims the class representatives assert, show a lack of typicality, *see id.* at 1054-55; *Stirman*, 280 F.3d at 562. Here, Plaintiffs have not shown that their state-law claims for unjust enrichment and abuse of process are typical of the class they seek to represent. This is because there are likely significant variations in state law—which Plaintiffs have made no effort to address—that preclude a finding of typicality.

Consider Plaintiffs' claim for unjust enrichment. Compl. [1] at 18-19. Unjust enrichment is governed by state law, and Plaintiffs propose a nationwide class without conducting any analysis for how the Court is to treat possible variations in state law. And in at least two states, unjust enrichment is not recognized as a separate cause of action. *See, e.g., Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone cause of action

for unjust enrichment . . .”); *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (“That view aligns with Texas state courts’ understanding that unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself.”) (gathering cases).  This disconnect in the remedial theories advanced by Plaintiffs and the availability of those remedial theories to the class they purport to represent undermines typicality; for potential class members in these states, Named Plaintiffs’ claims would not be typical of the class.

Plaintiffs suggest that they only discuss Mississippi law because “Defendant has refused to answer Plaintiffs’ class-related written discovery,” which seeks in part to “ascertain each state in which Defendant operates its Diversion Program.” Mem. [52] at 2 n.3.  But Plaintiffs maintain that Defendant operates in multiple states.  Inevitably, variations in state law exist, and Plaintiffs have not addressed how the Court should deal with these variations.  Because there are likely significant variations in state law that have not been addressed by Plaintiffs, they have not carried their burden of demonstrating that their claims are typical of the class.

d.    <u>Adequacy of Representation</u>

Rule 23(a)(4) requires that the “representative parties will fairly and adequately protect the interests of the class.”  Fed. R. Civ. P. 23(a)(4).  “Adequacy encompasses three separate but related inquiries: (1) the zeal and competence of the representatives’ counsel; (2) the willingness and ability of the representatives to

13

take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (cleaned up). "Class representatives must satisfy the court that they, and not counsel, are directing the litigation. To do this, class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)). "The Court may expect plaintiffs seeking certification to meet this standard by producing actual, credible evidence that the proposed class representatives are informed, able individuals who are themselves—and not the lawyers—actually directing the litigation." *Prause v. TechnipFMC, PLC*, No. 4:17-CV-2368, 2020 WL 3549686, at *5 (S.D. Tex. Mar. 9, 2020) (cleaned up).

Named Plaintiffs assert that they adequately represent the class because they have "hired counsel experienced in litigating consumer class actions and they have actively prosecuted their case," Mem. [52] at 13, and "[t]here are no conflicts of interest between Plaintiffs and class members," because they each "assert identical claims for injunctive relief and damages arising from the same facts," *id.* Plaintiffs' counsel has also submitted a declaration detailing his experience in complex class action litigation. *See* Decl. [51-2]. The Court is satisfied that Plaintiffs' counsel is competent to handle this litigation, *see id.*, and that there are no conflicts of interest between Plaintiffs and other class members. But Plaintiffs have not shown that

14

they, as opposed to counsel, are directing the litigation.  Nor have they shown that they are sufficiently informed about the case as to manage litigation efforts or that they have a willingness to take an active role in the case.

"The plain text of Rule 23 requires that court to 'find,' not merely assume, the facts favoring class certification."  *Unger*, 401 F.3d at 321.  And here, Plaintiffs have not provided any deposition testimony, affidavits, or other credible evidence of their involvement in this case.  There is simply no evidence whatsoever that Plaintiffs themselves are actively pursuing the case, have knowledge of the case, or are in any way more than empty vessels for their counsel to challenge the legality of electronic traffic enforcement.  Absent such evidence, Plaintiffs have not carried their burden of showing adequacy of representation.  *Compare Altier v. Worley Catastrophe Response, LLC*, Civ. No. 11-241, 2011 WL 3205229, at *10 (E.D. La. July 26, 2011) (denying class certification where the representative plaintiffs "presented *no evidence* to demonstrate that they are directing the litigation, are sufficiently informed about it to manage the litigation effort or have the willingness and ability to take an active role and protect the interests of absentee class members") (emphasis in original) and *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 146 (N.D. Tex. 2014) (denying class certification where the "only evidence submitted by the Pension Plan in support of its claims of adequacy is the Declaration of its Board Chair . . . [which] contains little more than formulaic, boiler-plate assertions over two pages of substantive text"), *with Prause*, 2020 WL 3549686, at *4 ("As evidence of adequacy, Plaintiff submitted a two-page, written declaration . . . Plaintiff also

provided sworn deposition testimony."), *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006) (concluding the adequacy requirement was met where "Plaintiffs have . . . submitted depositions in which class representatives attest to their level of personal knowledge, willingness and ability to prosecute the case, and understanding of the claims underlying this action"), and *McWhorter v. Serv. Corp. Int'l*, 748 F. Supp. 3d 459, 479 (S.D. Tex. 2024) ("Taken together, [Plaintiffs'] declarations and the whole of their testimony suggest that each will vigorously prosecute her claims, and that they have at least some knowledge beyond derivative knowledge acquired through counsel.").  On this record, Plaintiffs have not carried their burden of showing adequacy of representation.

2.    Rule 23(b)(2) Requirements

Turning to Rule 23(b), Plaintiffs seek to certify their class under Rule 23(b)(2).  Rule 23(b)(2) allows a class action to be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Instead of requiring common issues, Rule 23(b)(2) requires common behavior by the defendant toward the class."  *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (cleaned up).  As such, "Rule 23(b)(2) certification is available if three requirements are satisfied: (1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief

sought must be specific." *Id.* at 366-67 (internal quotation marks and citations omitted).  The Supreme Court has also explained that Rule 23(b)(2)

> applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Dukes*, 564 U.S. at 360-361 (emphasis in original).  Plaintiffs seek "[a] judgment declaring that Defendant" has violated the law, and "an injunction forbidding any future violations."  Compl. [1] at 19.  According to Plaintiffs, "Defendant's Diversion Program inflicts injury on Plaintiffs and class members in the same manner and based on the same grounds," Mem. [52] at 14, and "absent injunctive relief, Plaintiffs and class members face the possibility of having their driver's license suspended [even] though the Diversion Program is unlawful," *id.*; *see also* Compl. [1] at 15.

First, Rule 23(b)(2)'s focus is on whether a defendant's conduct applies "generally to the class."  Fed. R. Civ. P. 23(b)(2).  This "requires common behavior by the defendant towards the class, such that class members . . . have been harmed in essentially the same way."  *Yates*, 868 F.3d at 367 (citations omitted).  Here, Defendant's conduct—issuing citations through electronic monitoring—is common towards the class.  And all plaintiffs are allegedly harmed in the same way in that "Defendant unlawfully mailed Tickets to Plaintiffs and class members claiming that they owed money for allegedly operating a vehicle without insurance."  Mem. [52] at 12.

Second, injunctive relief must predominate over the monetary damages sought, *see Yates*, 868 F.3d at 366-67, but not so here.  "Monetary relief predominates unless it is 'incidental' to the requested injunctive relief or declaratory relief."  *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 199 (5th Cir. 2010).  Incidental damages are "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief."  *Id.* (citations omitted) (emphasis in original).  Moreover, "[s]uch incidental damages should only be those to which class members would be automatically entitled once liability to the class is established."  *Id.* (citations omitted).

Plaintiffs seek a declaration that Defendant's issuance of citations was illegal under various state laws.  Compl. [1] at 19.  They request actual damages in the form of "monies paid toward the Diversion Program, for all class members," Mem. [52] at 13, and punitive damages, Compl. [1] at 19.  This monetary relief does not directly flow from Defendant's liability on the claims that formed the basis of the injunctive or declaratory relief sought, to the class members as a whole.  If the Court were to declare that Defendant's Diversion Program violates respective state laws and issue an injunction preventing electronic traffic enforcement, the class members would not be entitled to monetary relief directly under the respective state laws.  Plaintiffs would still have to show individual harm in that they paid a fine, had their license suspended, or appeared in court.  Simply being mailed a citation,

without more, would not entitle a plaintiff to actual damages, at least under Mississippi law.

As for punitive damages, the Fifth Circuit has "assumed—with reservations—that punitive damages could be awarded on a classwide basis without individualized proof of injury, but emphasized that such damages would be limited to claims that an entire class or subclass was subjected to the same discriminatory act or series of acts." *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 377 (S.D. Tex. 2006) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir. 1998)). Assuming punitive damages are available in this context, "when plaintiffs ask a court to certify both equitable and punitive damages claims under Rule 23(b)(2), two questions emerge. First, can punitive damages be assessed without proof of liability to individual class members? Second, was each plaintiff affected by the challenged policy in the same way?" *Sambrano v. United Airlines, Inc.*, 347 F.R.D. 155, 180 (N.D. Tex. 2024), *appeal dismissed*, No. 24-10656, 2024 WL 6083707 (5th Cir. Sept. 6, 2024). Here, the answer to the first question is "no." For class members to recover punitive damages, they would be required to show individual proof that they were cited and fined by Defendant, or had their license suspended. Because punitive damages would require individual proof, they are not incidental to the injunctive relief sought.

Third, the injunctive relief sought by Plaintiffs is not specific. The specificity requirement directs "plaintiffs to give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in reasonable detail the acts

required." *Yates*, 868 F.3d at 367 (internal quotation marks and citations omitted).

While Rule 23(b)(2) "does not require every jot and tittle of injunctive relief be

spelled out at the class certification stage," it does require "reasonable detail as to

the acts required." *Id.* at 368 (citation omitted). Therefore, "[p]laintiffs will, at

minimum, have to describe in some kind of detail from what actions or inactions

Defendant should be restrained. A general request that Defendant be restrained

from violating Plaintiffs' [Constitutional] protections is insufficient." *Ward v.*

*Hellerstedt*, 753 F. App'x 236, 249 (5th Cir. 2018) (per curiam).

Plaintiffs "request that this Court enter: . . . [a] judgment declaring that

Defendant has committed the violations of law alleged in this action and an

injunction forbidding any future violations." Compl. [1] at 19. There is no content

to Plaintiff's requested injunction. Nor are there any details as to what acts would

be required by the Court or what Defendant should be forbidden from doing. This is

a plainly non-specific request. *Compare Yates*, 868 F.3d at 368 (finding enough

specificity to support an injunction where the plaintiffs requested that the district

court "enjoin Defendants to maintain a safe indoor apparent temperature" and

identified specific relief that would meet that standard: "maintaining a heat index

of 88 degrees or lower"), *with Maldonado v. Ochsner Clinic Foundation*, 493 F.3d

521, 524-25 (5th Cir. 2007) (finding a lack of specificity where the requested

injunctive relief lacked any meaningful content or guidance). Plaintiffs have not

satisfied Rule 23(b)(2)'s requirements because monetary damages predominate over

injunctive relief, and the injunctive relief sought is nonspecific in that it lacks any meaningful content or guidance.

3.  <u>Rule 23(b)(3) Specific Requirements</u>

Alternatively, Plaintiffs seek certification under Rule 23(b)(3).  A party seeking class certification under Rule 23(b)(3) must show two things: "(1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Madison*, 637 F.3d at 554 (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005)).

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks and citation omitted).  Satisfying predominance is a "far more demanding hurdle than Rule 23(a)'s commonality requirement," *Cruson*, 954 F.3d at 253, and "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class," *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 316 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 774 (2024).  The Supreme Court has distinguished common and individual questions this way:

> An individual question is one where members of a proposed class will need to present evidence that varies member to member, while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalize, class-wide proof.

*Tysons Foods, Inc.*, 577 U.S. at 454 (alterations in original) (citation omitted).  And

"[w]here a proposed class stretches across multiple jurisdictions," the Fifth Circuit

has "underscored that a Rule 23(b)(3) analysis must carefully consider variations in

pertinent state laws."  *Cruson*, 954 F.3d at 254.  This is because

> [i]n a multi-state class action, variations in state law may swamp any
> common issues and defeat predominance . . . Accordingly, a district court
> must consider how variations in state law affect predominance and
> superiority . . . A requirement that a court know which law will apply
> before making a predominance determination is especially important
> when there may be differences in state law.

*Stirman*, 280 F.3d at 564 (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734,

741 (5th Cir. 1996)).  Plaintiffs propose the following relevant common questions:

> a.   Whether state or applicable law permits Defendant's Diversion
>      Program;
>           . . .
> d.   Whether Defendant's conduct constitutes abuse of process;
> e.   Whether the Diversion Program unjustly enriched Defendant;
> f.   Whether the Diversion Program offends public policy;
> g.   Whether the Diversion Program is oppressive or unconscionable; and
> h.   Whether Plaintiff and the Class are entitled to actual, punitive,
>      or other damages, costs, attorney fees, and other relief because of
>      Defendant's practices.

Compl. [1] at 14.[3]  Plaintiffs assert that common questions predominate because

"Defendant's Diversion Program, which operates uniformly with respect to each

class member, is at the center of this case," and the "question of its unlawfulness

rises and falls on common issues rather than individual ones."  Mem. [52] at 14.

---

[3] Again, the Court has already dismissed Plaintiffs' federal claims that formed the basis of proposed common questions (b) and (c).  *See* Mem. Op. & Ord. [20].

Plaintiffs say that "[t]here simply are no individual issues that predominate over common ones." *Id.*

While the legality of Defendant's Diversion Program is at the "center" of this case, Mem. [52] at 14, individual issues overwhelm common ones. Plaintiffs seek to represent a nationwide class of drivers ticketed by Defendant. Compl. [1] at 13. But Plaintiffs' common questions turn on the substantive law of multiple states. And the Court is asked to determine the legality of Defendant's program under the substantive law of multiple yet-to-be-identified states. *See id.* at 14 (proposing as a common question for a nationwide class "[w]hether state or applicable law permits Defendant's Diversion Program"). Moreover, Proposed Common Questions (d) and (e) ask the Court to determine whether Defendant's Diversion Program constitutes abuse of process and unjust enrichment, claims that once again require the Court to apply the substantive law of different states.

The Fifth Circuit is clear: where different state laws govern different plaintiffs' claims, a court is "*required* to consider differences in state law." *Elson*, 56 F.4th at 1006 (emphasis in original). Plaintiffs then must "assure the district court that such differences in state law would not predominate over issues individual to each plaintiff in the litigation. [Plaintiffs are] thus obliged to provide 'an extensive analysis of state law variations' so that the district court [can] 'consider how those variations affect[] predominance.'" *Elson*, 56 F.4th at 1006 (quoting *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007)).

Plaintiffs have not in any way addressed variations in the substantive state laws the Court would have to apply in this case. Most importantly, they have not identified any state statutes that make Defendant's conduct illegal under the substantive law of other states, and how differences in other state laws regarding electronic traffic enforcement may affect the putative class members' claims. Nor have they addressed differences in their state-law claims for unjust enrichment and for abuse of process. By not addressing potential differences in state law, the Court cannot conduct the rigorous inquiry required by Rule 23(b). *See Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000) ("The district court is required to know which law will apply before it makes its predominance determination. The district court here could not discharge its duty because plaintiffs did not supply adequate information on the policies of other interested states relevant to the choice of law."); *Castano*, 84 F.3d at 741 (reversing a district court's class certification because its "consideration of state law variations was inadequate" where "[t]he surveys provided by the plaintiff failed to discuss, in any meaningful way, how the court could deal with variations in state law"); *Becnel v. Mercedes-Benz USA, LLC*, No. 14-0003, 2014 WL 2506506, at *2 (E.D. La. June 3, 2014) ("Neither party to the instant matter, most notably Plaintiff, has provided the Court with any kind of survey of the various state laws that will apply. Without such information, the Court simply cannot engage in the rigorous inquiry contemplated under *Castano*, meaning that Plaintiff has failed to meet his burden[.]"); *Huber v. BioScrip Infusion Servs.*, No. 20-2197, 2021 WL 1313411, *10 (E.D. La. Apr. 8, 2021) ("Plaintiffs bring

six separate state law claims, . . . [w]ithout additional information, the Court is unable to determine whether variations in state law would render class treatment improper because Plaintiffs do not allege which states' laws would be implicated in this action."); *see also Stirman*, 280 F.3d at 563-66.

Although Plaintiffs provide an analysis of how Defendant's program might be illegal under Mississippi law, *see generally* Compl. [1], they blame Defendant for their inability to determine what other states Defendant operates in, Mem. [52] at 2 n.3. But even absent an analysis of other specific state laws, Plaintiffs could have— but do not—address how the Court is supposed to handle inevitable variations in the substantive law for the nationwide class they seek to certify. Nor do they address the potential impact on their request if some states do not recognize the asserted causes of action. By not addressing whether differences in state law will defeat commonality, the Court cannot conduct the rigorous analysis required by Rule 23(b), and Plaintiffs have not carried their burden under Rule 23(b)(3). For these same reasons, Plaintiffs have not carried their burden of establishing commonality under Rule 23(a)(2). *See supra* II.B.1.b.

C.    <u>Plaintiffs Must Demonstrate That the Court Retains Original Jurisdiction</u>

When Plaintiffs sued, they invoked the Court's original jurisdiction on two grounds: (1) federal question jurisdiction under 28 U.S.C. § 1331, by raising a federal due process claim under 42 U.S.C. § 1983, Compl. [1] at 2; and (2) CAFA jurisdiction under 28 U.S.C. § 1332(d), *id.* Plaintiffs no longer have a federal due process claim, *see* Mem. Op. & Ord. [20], and now, their request for class

certification has been denied. Plaintiffs will therefore be directed to show cause how this Court retains original jurisdiction under CAFA, or whether some other basis of original subject-matter jurisdiction exists.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiffs Amy Divine, Karl Merchant, and Columbus Jones' Motion [51] for Class Certification is **DENIED**.

**IT IS, FURTHER, ORDERED** that, Plaintiffs are directed, **on or before January 19, 2026**, to show cause in writing whether the Court retains original jurisdiction under CAFA, or whether some other ground for original federal subject-matter jurisdiction exists.

**SO ORDERED AND ADJUDGED**, this the 5th day of January, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE